[No. A016663. First Dist., Div. One June 25, 1985.]

JOSEPH I. SMITH, Plaintiff and Appellant, v.
VALLEJO GENERAL HOSPITAL et al., Defendants and Respondents.

**[Opinion certified for partial publication\*]**

---

*Pursuant to California Rules of Court, rule 976(b)(1) and (b)(3), this opinion is to be published in full with the exception of part IV.

**COUNSEL**

Brian McCarthy, Hugh Comisky and Taft, Taft & Comisky for Plaintiff and Appellant.

Jacquelyn J. Garman and Hanson, Bridgett, Marcus, Vlahos & Stromberg for Defendants and Respondents.

**OPINION**

**RACANELLI, J.**—Appellant Joseph I. Smith, a licensed physician, appeals from the trial court's denial of his petition for writ of mandate pursuant to

section 1094.5 of the Code of Civil Procedure (to which all further statutory references apply unless otherwise indicated) requesting the court to order Vallejo General Hospital and its board of directors (hereafter respondent hospital) to set aside its decision denying him a certain clinical privilege.[1] Appellant had been on the staff of Broadway Hospital in Vallejo when it was acquired by respondent hospital in 1979. Under respondents' bylaws, appellant was required to apply for staff membership and clinical privileges at respondent hospital in order to practice at either hospital facility.[2] Upon completion of the credentialing process, appellant was granted most of the clinical privileges sought; some of the requested privileges were either denied or granted with restrictions, due primarily to appellant's lack of formal residency training in those areas.[3] A formal hearing was conducted by the judicial review committee (JRC) at appellant's request; the JRC decision denying the requested privileges was thereafter adopted by respondents.[4] Appellant then unsuccessfully petitioned the court below for mandamus relief. This appeal followed.

I

■ Appellant first contends the trial court erred in reviewing respondents' final decision under the substantial evidence test. Appellant argues that the independent judgment standard must apply since the substantial evidence test under section 1094.5, subdivision (d) may not be constitutionally applied to his fundamental vested right to practice medicine and respondent hospital does not fall within the definition of "private hospital" under the statute.[5] The contention is meritless for several reasons.

---

[1]On March 8, 1985, the appeal of four other appellants, Drs. Frank, Brown, Kassis and Nelson, was dismissed pursuant to stipulation of the parties. Only Dr. Smith remains on appeal contesting the hospital's decision concerning the medical privilege for disseminated intravascular coagulation (DIC), a specific type of treatment for a hematological condition of hemorrhagic diathesis. Appellant was in fact *granted* the privilege but with the condition that he have a consultation by an internal medicine physician.

[2]In accordance with the bylaws, appellant's application was considered by specific medical or surgical staff committees and reviewed by the credentials committee and the executive committee.

[3]At this stage of the proceedings, appellant and other physicians unsuccessfully sought a writ of mandate in Solano County Superior Court. That decision was upheld on appeal due to a failure to exhaust administrative remedies. (*Brown* v. *Vallejo General Hospital* (March 10, 1983, A0 14064) [unpub. opn.].)

[4]The JRC was composed entirely of physicians who were not staff members of respondent Hospital.

[5]Section 1094.5, subdivision (d) provides: "Notwithstanding the provisions of subdivision (c), in cases arising from private hospital boards [or boards of directors of districts organized pursuant to The Local Hospital District Law, Division 23 (commencing with Section 32000) of the Health and Safety Code], abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record. . . ." The bracketed portion was added in 1982. (Stats. 1982, ch. 812, § 3, p. 3103.)

Preliminarily, it is questionable whether appellant has properly preserved the issue in view of his failure to discuss the legal issues with citation of appropriate authorities (see *In re Smith* (1970) 3 Cal.3d 192, 197 [90 Cal.Rptr. 1, 474 P.2d 969]) and by resorting to the improper practice of incorporating the trial brief through reference to the clerk's transcript as his brief on appeal. (*Balesteri* v. *Holler* (1978) 87 Cal.App.3d 717, 720-721 [151 Cal.Rptr. 229]; *Golden* v. *Golden* (1969) 270 Cal.App.2d 401, 407-408 [75 Cal.Rptr. 735]; *U. S. Industries, Inc.* v. *Vadnais* (1969) 270 Cal.App.2d 520, 535 [76 Cal.Rptr. 44].) In any case, it is settled that the substantial evidence test is the appropriate standard of review under subdivision (d) governing appellant's application for medical privileges. In *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802 [140 Cal.Rptr. 442, 567 P.2d 1162] [*Anton I*], the Supreme Court reasoned that the independent judgment test should be used in reviewing a hospital's decision concerning *reappointment* of a physician to its staff because the right involved was both fundamental and vested. (*Id.*, at p. 825.) Immediately after that decision, the Legislature adopted subdivision (d) establishing the substantial evidence standard of review for private hospitals. (Stats. 1978, ch. 1348, § 1, p. 4476.)

While acknowledging the purpose of the legislative enactment directed to review of denial of reappointment to a private hospital staff, the court reiterated its decision to "continue to follow the *Anton* distinction and adhere to the rule that substantial evidence review applies to decisions denying initial applications for hospital privileges." (*Unterthiner* v. *Desert Hospital Dist.* (1983) 33 Cal.3d 285, 298 [188 Cal.Rptr. 590, 656 P.2d 554], cert. den. (1984) 464 U.S. 1068 [79 L.Ed.2d 211, 104 S.Ct. 973]; see also *Cipriotti* v. *Board of Directors* (1983) 147 Cal.App.3d 144, 154 [196 Cal.Rptr. 367].) Of course, respondent hospital, a nonprofit organization, is included within the statutory reference to private hospital boards. "Manifestly the term 'private hospital' as used in the statute was meant to refer to [respondent] and other hospitals like it organized as nonprofit corporations." (*Anton* v. *San Antonio Community Hospital* (1982) 132 Cal.App.3d 638, 649 [183 Cal.Rptr. 423] [*Anton II*].)

█ In his reply brief, appellant claims subdivision (d) deprives him of equal protection because "it treats physicians asserting a fundamental vested right differently than it does anyone else asserting a fundamental vested right." He is mistaken. First, appellant's license to practice is unaffected; he retains the full rights and privileges of his license to practice medicine as well as many clinical privileges at respondent hospital. Second, any right to practice at respondent hospital could not be considered vested because appellant was not then exercising that right at the time of his application. (See *Anton I, supra,* 19 Cal.3d at pp. 824-825.) Third, the Legislature has

authority to provide for a substantial evidence review of administrative determinations. (See *Frink* v. *Prod* (1982) 31 Cal.3d 166, 173 [181 Cal.Rptr. 893, 643 P.2d 476].)[6]

## II

■■■ Appellant next argues that respondents' "residency requirement" is unreasonable and arbitrary. The argument is flawed.

Respondents' credentialing process for clinical privileges imposes formal training requirements for the more difficult medical or surgical specialities. Appellant argues that in view of his overall experience, formal residency training should be only one rather than the overriding factor in assessing his qualifications for clinical privileges. Respondents counter that the overwhelming number of specific clinical privileges sought by appellant was in fact granted.[7]

Appellant was not denied any right to practice medicine or admission to the staff of respondent hospital.[8] Rather, he was denied the single privilege of performing a complicated medical procedure because he did not possess the requisite formal training.

Hospitals have become increasingly accountable for the competence of their medical staff. (See, e.g., *Elam* v. *College Park Hospital* (1982) 132 Cal.App.3d 332 [183 Cal.Rptr. 156]; see also *Berman* v. *Florida Medical Ctr., Inc.* (5th Cir. 1979) 600 F.2d 466.) Formal training for the more complex or difficult procedures is certainly a relevant factor to be considered in assessing necessary competence. (See *Shaw* v. *Hospital Auth. of Cobb City.* (5th Cir. 1980) 614 F.2d 946, 952, cert. den., 449 U.S. 955 [66 L.Ed.2d 220, 101 S.Ct. 362].)

■ Accordingly, rules or policies governing hospital staff privileges will not be set aside by a court unless such standards are "substantively irrational or otherwise unreasonably susceptible of arbitrary or discriminatory application." (*Miller* v. *Eisenhower Medical Center* (1980) 27 Cal.3d 614, 626-627 [166 Cal.Rptr. 826, 614 P.2d 258]; see also *Sosa* v. *Board of Managers of Val Verde Memorial Hospital, supra,* 437 F.2d 173, 177.)

---

[6]Since the record does not reveal any evidence that appellant Smith was ever a staff member of respondent hospital, we do not consider appellant's companion argument on his status as a reapplicant.

[7]It is undisputed that appellant was granted 98 percent of the 109 privileges requested.

[8]See *Sosa* v. *Board of Managers of Val Verde Memorial Hospital* (5th Cir. 1971) 437 F.2d 173, 175 (a doctor has no constitutional right to staff privileges). See also *Unterthiner* v. *Desert Hospital Dist., supra,* 33 Cal.3d 285, 298.

 We find nothing in respondents' policy granting such staff privileges which could be viewed as irrational or unfair.

Finally, appellant has failed to demonstrate any arbitrary application of the relevant standard. No evidence was presented of unequal treatment of physicians in like circumstances, i.e., new applicants with the same medical training who were granted privileges denied to appellant. Nor has any authority been presented compelling respondents to lower their standards for new applicants because current staff members originally met different credentialing requirements.[9]

We conclude that the findings of the trial court upholding the administrative decision are supported by substantial evidence.[10] (*Cipriotti* v. *Board of Directors, supra,* 147 Cal.App.3d 144, 155.)

## III

Appellant also contends that respondents' decision to deny him the requested clinical privilege was the result of procedural unfairness. Our examination discloses no merit in any of the six alleged procedural errors.

 It is well established that "fair procedure" must be employed in reaching hospital staff membership decisions. (*Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 554 [116 Cal.Rptr. 245, 526 P.2d 253]; *Ascherman* v. *Saint Francis Memorial Hosp.* (1975) 45 Cal.App.3d 507, 511 [119 Cal.Rptr. 507].) That requirement embraces adequate notice of the charges and a fair opportunity to respond. (*Anton* v. *San Antonio Community Hosp., supra,* 19 Cal.3d 802 [*Anton I*].) But it "does not compel formal proceedings . . . nor adherence to a single mode of process." (*Pinsker* v. *Pacific Coast Society of Orthodontists, supra,* 12 Cal.3d at p. 555.)

Herein, the challenged proceedings were conducted in accordance with respondents' bylaws, modeled on the "Uniform Code of Hearing and Ap-

---

[9] The record reflects that applicants for reappointment must now meet the same credentialing standards.

[10] Appellant makes two subsidiary arguments concerning the formal training requirement: the requirement was in conflict with the bylaws, and the "grandfather clause" was unfair. The bylaws provide that applications for clinical privileges will be evaluated based upon "education, training, experience, demonstrated competence, references and other relevant information, . . ." (Art. VI, § 1(b) (1976 ed.).) This does not preclude respondents from differentiating the factors in terms of importance, especially where difficult or complex procedures are involved.

The "grandfather clause" provided an exemption to the residency requirement for physicians who had attended medical school in years past when residency was not a standard requirement of medical training. Such procedure is both reasonable and fair.

peal Procedures" of the California Medical Association and California Hospital Association. (The "Uniform Code" was implicitly approved by the Supreme Court in *Anton I, supra,* 19 Cal.3d at p. 830.) Moreover, the provisions of respondents' bylaws paralleled the administrative procedure applicable to publicly-funded hospitals under article 3 of the Local Hospital District Law. (Health & Saf. Code, §§ 32150-32155.) We discuss the respective contentions seriatim.

1. *Committee Membership*

■ Relying on *Applebaum* v. *Board of Directors* (1980) 104 Cal.App.3d 648 [163 Cal.Rptr. 831], appellant first attacks the composition of the various committees which reviewed his application alleging impermissible overlapping membership. The reliance is misplaced.

*Applebaum* criticized the overlapping membership in a hospital investigatory committee and an adjudicatory appeal committee. (*Id.,* 104 Cal.App.3d at p. 659.) In contrast, the executive committee which functioned as the investigatory committee was entirely separate from the adjudicatory JRC, the membership of which was composed entirely of outside physicians who were *not* members of the staff of respondent hospital.

Under respondents' bylaws, applications for medical and surgical privileges were first reviewed by the specific medical or surgical departments involved which made recommendations to the executive committee, the body empowered to grant or deny privileges. Accordingly, no impermissible overlapping in membership on the two committees was involved.

2. *Adequacy of Notice*

■ Appellant also argues that he did not receive adequate notice of the reasons for denial of the privilege requested because respondents failed to specifically inform him of the residency requirement.

The record reveals that at the first session of the JRC hearings (which extended over the course of one year), appellant's counsel admitted awareness of respondents' "formal training" requirement. Nor did appellant— who had earlier received inquiry from the credentials committee regarding his formal training—claim any prejudice due to surprise or lack of opportunity to prepare. The relevant bylaw provision clearly indicates that education and training are factors to be considered in awarding privileges. Moreover, even before the review proceedings began, appellant received adequate written notice of the committee's basis for the denial of "those

certain clinical privileges.'' (See generally *Anton I, supra,* 19 Cal.3d at p. 830.)

### 3. *Selection of Hearing Officer and JRC Members*

■ Appellant next claims, without benefit of supporting authority, that it is patently unfair for respondents to select ''both judge and jury.'' The eristic claim requires little discussion. First, under the bylaws the hearing officer performs no adjudicative function and acts only as an administrator or advisor to the JRC. And the JRC members were authorized to, and made, the ultimate decisions; as earlier noted, those neutral physician members were not affiliated with the staff at respondent hospital.

### 4. *Discovery*

Appellant further argues that it was unfair to deny discovery of the minutes of the respondent board and medical staff committee meetings. Since appellant neither explains nor supports the argument in his brief, we may consider the point waived. (*Balesteri* v. *Holler, supra,* 87 Cal.App.3d 717, 721.) Moreover, not only has appellant failed to demonstrate any resulting prejudice, no authority is cited establishing a right to formal discovery in such an administrative proceeding. (See *Hackethal* v. *California Medical Assn.* (1982) 138 Cal.App.3d 435, 444 [187 Cal.Rptr. 811]; see also *Anton I, supra,* 19 Cal.3d at p. 829.)

### 5. *Consideration of Formal Training Requirement*

■ Appellant's penultimate claim of procedural error—the refusal of the JRC to determine the reasonableness of the formal training requirement—focuses on the holding in *Woods* v. *Superior Court* (1981) 28 Cal.3d 668 [170 Cal.Rptr. 484, 620 P.2d 1032]. The claim is wide of its mark. In *Woods,* the court determined that the validity of a Department of Social Services regulation could be challenged in the departmental administrative hearing as well as in the administrative mandamus petition because the Welfare and Institutions Code expressly conferred such jurisdiction. (*Id.,* at pp. 674, 677.)

Respondents' bylaws repose no similar authority in the JRC, and appellant's attempt to expand the holding in *Woods* to include *all* administrative hearings, including private hospital boards, is misconceived.

### 6. *Burden of Proof*

■ Lastly, appellant argues that the JRC applied the wrong burden of proof. Respondents' bylaws direct the committee to find against the person

requesting the hearing unless that person proves by "clear and convincing proof" that the decision appealed from was arbitrary, unreasonable or not sustained by the evidence. A virtually identical provision was approved in *Anton I, supra,* 19 Cal.3d at p. 829. The record reflects that a substantial showing was made by the executive committee in support of its decision. (See *Anton I, supra,* at pp. 829-830.) Thus, it was appellant's burden to show by clear and convincing proof that the decision was arbitrary, unreasonable or lacking substantial evidence. No error is discerned.

IV*

. . . . . . . . . . . . . . . . . . . . . . . .

We conclude that the overall procedures were fair and regular and the formal training requirement was reasonable. The judgment is affirmed.

Elkington, J., and Holmdahl, J., concurred.

---

*See footnote, *ante,* page 450.