[No. AO15513. First Dist., Div. One. May 9, 1984.]

JOHN W. BRAY, Plaintiff and Appellant, v.
INTERNATIONAL MOLDERS AND ALLIED WORKERS UNION et
al., Defendants and Respondents.

610

■■■■■■■■■■■■■■■■■■■■■■■■■

COUNSEL

Patrick T. Galligan and Galligan & Biscay for Plaintiff and Appellant.

David A. Rosenfeld, Van Bourg, Allen, Weinberg & Roger, James L. Dillon and O'Connor, Cohn, Dillon & Barr for Defendants and Respondents.

OPINION

ELKINGTON, J.—Defendant International Molders and Allied Workers Union, Local 164 (hereafter Local 164), was a district trade union of northern California affiliated with, and subordinate to, defendant International Molders and Allied Workers Union (the International Union) with headquarters in the State of Ohio. Local 164's governing body was its executive board, whose acts and determinations required approval of its ultimate governing body, its membership.

By rules of Local 164 and its parent body, members whose dues were delinquent for two months became automatically suspended from membership, often resulting under collective bargaining agreements in loss of their employment. The International Union had issued a directive that such members be given reasonable written notice of their imminent suspension.

Plaintiff John W. Bray (Bray) was the elected, full time, salaried financial secretary of Local 164.

To comply with the International Union's directive, Local 164's executive board adopted a resolution, approved by its membership, that Bray as financial secretary notify delinquent members in writing of their delinquency at least 10 days in advance of their impending suspension. Bray's response is perhaps best indicated by his following trial testimony in the action from which this appeal has emanated. He had admitted refusing to comply with the executive board's and membership's order:

"Q. Even though the executive board told you to do it?

"A. It was nonsense to do it.

"Q. It was silly, wasn't it?

"A. Right.

"Q. But you were instructed to do it nevertheless? Is that right?

"A. By the executive board, yes.

"Q. And you didn't follow their instructions, did you, Mr. Bray?

"A. I did not."

Three of Local 164's members, for that reason, filed charges against Bray for insubordination.

In appointing a trial committee of seven members the local's president invited Bray to suggest names, an invitation which Bray did not accept. The president then named seventeen persons from the local's membership, giving "each side" the right to "scratch" five names, thus to finally arrive at seven trial committee members. Bray "scratched" none.

The charges were thereafter tried. Bray was found guilty by the trial committee of insubordination, as charged. The sanction decided upon by the committee was removal from office. The proceedings leading to, and including, such removal from office were thereafter approved by the local's membership. Bray was thereupon removed from his office as financial secretary of Local 164, but *not* as one of its members.

Bray thereafter commenced the instant action, charging that he had "intentionally, wrongfully, and unlawfully" been removed from office, resulting, among other things, in "exemplary or punitive damages in excess of the sum of $500,000.00." Judgment, after trial to the court, was entered against Bray in the action, from which judgment he has appealed.

Hereafter our reference to "hearing" will be to the proceeding before the trial committee; and our reference to "trial," to that before the superior court.

We have read and considered the record and briefs of the respective parties. It is concluded, for the reasons we now state, that the judgment must be affirmed.

But for his appellate contentions, which we consider seriatim and as phrased by him, Bray makes no argument that the procedures leading to his removal from office were other than as prescribed or permitted by the International Union's constitution and Local 164's bylaws.

I. *Contention*: "Mr. Bray's removal from office was not supported by sufficient evidence."

Here, he argues: "The issue, of course, is whether Mr. Bray was required to follow the resolutions passed by the membership and the Executive Board. If there was a provision in the by-laws or constitution requiring the Financial Secretary to obey such directives, the Trial Committee decision would have been proper. But no such provision existed."

Bray misapprehends the law.

In an unincorporated association such as a trade union (as in corporations) all authority vests in its members (or shareholders), and such officers and inferior boards or agencies as are appointed or created by them. Such authority will of course be subject to any constitution, bylaws, rules or regulations previously adopted, or of a parent organization previously approved, by its members, and which are not contrary to law or public policy.

In treating "a labor union as an entity": " ' "It is obvious that . . . they are *sui generis,* and approximate corporations in their methods of operation and powers. . . ." ' " (*Daniels* v. *Sanitarium Assn., Inc.* (1963) 59 Cal.2d 602, 606 [30 Cal.Rptr. 828, 381 P.2d 652]; *Marshall* v. *International Longshoremen's & Warehousemen's Union* (1962) 57 Cal.2d 781, 787 [22 Cal.Rptr. 340, 372 P.2d 100].) " 'Courts will interfere for the purpose of protecting property rights of members of unincorporated associations in all proper cases, and when they take jurisdiction, will follow and enforce, so far as applicable, the rules applying to incorporated bodies of the same character.' " (*Oil Workers Intl. Union* v. *Superior Court* (1951) 103 Cal.App.2d 512, 571 [230 P.2d 71].) "Probably above all else in principle, democracy in labor unions is important to the workman." (*Chavez* v. *Sargent* (1959) 52 Cal.2d 162, 193 [339 P.2d 801], disapproved for other reasons in *Petri Cleaners, Inc.* v. *Automotive Employees, etc., Local No. 88* (1960) 53 Cal.2d 455, 473-474 [2 Cal.Rptr. 470, 349 P.2d 76].) And:

"In cases of this type [courts] must strive both to protect the rights of individual members and to avoid impairing the right of the union to govern itself." (*Cason* v. *Glass Bottle Blowers Assn.* (1951) 37 Cal.2d 134, 143 [231 P.2d 6, 21 A.L.R.2d 1387].)

The hearing's, and the trial's, evidence established, indeed Bray concedes, that he *refused to obey* the order of the membership of Local 164 and its executive board. And he at all relevant times continued in such refusal, and assertion of his reasons therefor. His removal from office was thus essential to secure obedience to the subject order. The order was manifestly reasonable, and *not* contrary to law or public policy. There was accordingly "sufficient [i.e., substantial] evidence" supportive of Bray's removal from office.

II. *Contention*: "Mr. Bray was not afforded those rudimentary rights which would have given him a reasonable opportunity to defend against the charges."

The supporting argument is that Bray was denied "due process," in that the trial committee appointed by the local's president "was not impartial." He insists: "It is simply not fair that an individual's triers of fact should be selected by his enemy and, in essence, his prosecutors. And it is an absolute denial of those rudimentary rights of due process to have triers of fact who openly espouse the conviction of the charged party before the trial itself. The trial court did find that William Garcia was biased against Mr. Bray. The court, however, went on to hold that the evidence did not show that Mr. Garcia was so prejudiced against Mr. Bray that he could not be impartial."

It will be noted that no appellate contention is made that Bray was not accorded the traditional *notice* of, and *hearing* upon, the charges against him which, of course, is the essence of procedural due process. (See *Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 612 [156 Cal.Rptr. 718, 596 P.2d 1134].)

We observe neither unfairness nor other abridgment of due process in the required procedures followed by Local 164. But we advert to, and consider, Bray's charge that a member of the trial committee, Mr. Garcia, "was so prejudiced against Mr. Bray that he could not be impartial."

In respect of the above-noted Mr. Garcia, the trial court did find: "Although the court finds that Trial Committee person William Garcia was biased against Mr. Bray, there is no evidence that any member of the Trial

Committee, including Trial Committee person William Garcia, had pre-judged the charges against Mr. Bray or was biased in such a manner as to render Mr. Bray's trial lacking in due process."

The evidence established that Bray, and his representative at the hearing, were aware of the claimed "bias" of Mr. Garcia before its commencement. Yet at the hearing's beginning Bray's only objection, without mention of Mr. Garcia, was to the trial committee generally and to another of its members. It was not until well after the hearing's commencement that an issue of Garcia's bias was raised. Bray's tardy objection to Mr. Garcia, then made, was overruled on the ground of its untimeliness.

Moreover, it will be remembered that Local 164's president had given Bray the opportunity to suggest members' names for the trial committee and thereafter to "scratch" off five names. Both offers had been rejected by Bray who thus had an opportunity to eliminate Mr. Garcia from the trial committee.

We opine, assuming arguendo that Mr. Garcia was prejudiced against Bray, relief therefrom was voluntarily and knowingly waived.

We note further that although Bray alone had immediate authority over the collection and delinquency of a member's dues, and suspension, he at no point indicated a willingness to conform to the executive board's and membership's resolutions. Removal from office was accordingly the only reasonable sanction.

No denial of due process nor other unfairness appears.

 III. *Contention*: "Mr. Bray was entitled to a jury trial."

The contention concerns the trial, not the hearing.

The trial court concluded, after hearing and argument, that Bray's action was of the nature of "administrative mandamus" under Code of Civil Procedure section 1094.5. Such proceedings, the statute says, "shall be heard by the court sitting *without a jury*." (Italics added; Code Civ. Proc., § 1094.5, subd. (a).) The contention will accordingly be treated as that Bray's action was not such a proceeding as is covered by section 1094.5.

Code of Civil Procedure section 1094.5, subdivision (a), applies to actions commenced "for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which

by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer. . . .'' In such cases a verbatim record of the administrative proceeding, and written findings of fact, are customarily made and available. (Here the proceeding before the trial committee substantially satisfied § 1094.5's requirements.)

■ It is now authoritatively held that Code of Civil Procedure section 1094.5 will apply to *nongovernmental* administrative agencies. In *Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 816-817 [140 Cal.Rptr. 442, 567 P.2d 1162], the state's high court declared: "Section 1094.5, as we have pointed out above, is by its terms made applicable to *'any final administrative order or decision* made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the *inferior tribunal, corporation, board or officer.* . . .' Clearly this language is not limited, on its face at least, to governmental as opposed to nongovernmental agencies. Moreover, the last-italicized language appears to have been drawn directly from the terms of section 1085, dealing with so-called 'traditional mandate.' It has long been clear, of course, that section 1085 mandate is available not only to compel official acts on the part of governmental agencies *but also* to compel nongovernmental bodies or officers to perform their legal duties. It would seem to follow, therefore, that section 1094.5, by using substantially identical language in describing the kind of administrative body whose decisions are subject to review under its provisions, was intended to apply to the same spectrum of agencies to which section 1085 has been held applicable *in all cases in which the subject decision is the product of a proceeding in which a hearing and related procedural protections are required by law.*" (Italics in original.)

■ Moreover, courts will pay "proper respect" to such "an association's quasi-judicial procedure, precluding an aggrieved party from circumventing the established avenue of mandamus review. In addition, this result will simplify court procedures by providing a uniform practice of judicial, *rather than jury,* review of quasi-judicial administrative decisions. (Cf. Code Civ. Proc., § 1094.5; *Boren v. State Personnel Board* (1951) 37 Cal.2d 634, 637 [234 P.2d 981].)" (Italics added; *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 484 [131 Cal.Rptr. 90, 551 P.2d 410].)

■ We conclude that Bray's action, by which he sought relief from the claimed "intentional, wrongful, and unlawful" administrative determination of Local 164 that he be removed from office as its financial secretary, was

properly deemed by the superior court as a proceeding under Code of Civil Procedure section 1094.5.

It follows that Bray was *not* entitled to a jury trial in the superior court.

■ IV. *Contention*: "The trial court should have used its independent judgment to determine if Mr. Bray's removal was supported by the weight of the evidence."

The contention depends for its validity upon the correctness of Bray's argument, that in the termination of his employment he was deprived of a *"fundamental vested right."* No authority is offered that his right to continued employment until the expiration of his three-year term was such a fundamental right.

There is high authority holding that union proceedings in which an officer is expelled for an indefinite period need only be supported by *"some evidence."* (*Boilermakers* v. *Hardeman* (1971) 401 U.S. 233, 245-246 [28 L.Ed.2d 10, 21, 91 S.Ct. 609].)

California's high court holds that judicial determinations whether an asserted claim is of a "fundamental vested right" must be made on a *"case-by-case"* analysis. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915 [80 Cal.Rptr. 89, 458 P.2d 33].)

It is noted that Bray had not been expelled as a member of Local 164, and thereby deprived of earning a living at his trade. Nor was he precluded from running again for financial secretary or other union office.

We opine that it may not reasonably be said that, on the facts and circumstances of his case, Bray's claimed rights are fundamental and vested.

■ V. *Contention*: "The court committed reversible error by refusing to decide Mr. Bray's other claims."

We discern but one "other claim" concerning which Bray complains: "The court refused to decide whether or not defendants terminated Mr. Bray because he pursued a wage claim through his attorney and via a lawsuit."

The trial court *did* decide, and find, that defendants had lawfully terminated Bray upon substantial evidence.

It is settled law that: " '[H]owever lame, however inconclusive, any number of the findings may be, if in any case there be one clear, sustained and sufficient finding upon which the judgment may rest, every presumption being in favor of the judgment, it will be here concluded that the court did rest its judgment upon that finding, or those findings, and the others may and will be disregarded.' " (*Brewer* v. *Simpson* (1960) 53 Cal.2d 567, 584 [2 Cal.Rptr. 609, 349 P.2d 289].) Applying this rule we find the instant contention meritless.

Moreover, the subject matter of the instant contention does not appear to have been at issue in the superior court; at least no record reference thereto is made. (See rule 15(a), Cal. Rules of Court.) We therefore need not consider it. (*Metzenbaum* v. *Metzenbaum* (1950) 96 Cal.App.2d 197, 199 [214 P.2d 603].)

We have considered and resolved Bray's five appellate points. (See rule 15(a), Cal. Rules of Court.) Throughout his appellate briefs he makes other complaints, not charged as reversible error. We find no merit in any of such complaints.

The judgment is affirmed.

Racanelli, P. J., and Newsom, J., concurred.