[No. B067408. Second Dist., Div. Three. Sept. 1, 1994.]

DELTA DENTAL PLAN OF CALIFORNIA, Plaintiff and Respondent, v. CHARLES BANASKY et al., Defendants and Appellants.

**COUNSEL**

Stradling, Yocca, Carlson & Rauth and Randall J. Sherman for Defendants and Appellants.

Cutler & Cutler, Salerno & Dassoff, Paul R. Salerno, Nancy L. Dassoff, Heller, Ehrman, White & McAuliffe and Matthew L. Larrabee for Plaintiff and Respondent.

## Opinion

**KLEIN, P. J.**—Defendants and appellants Charles Banasky (Banasky) and David G. Van Horn (Van Horn) (collectively, the dentists) appeal a judgment following a grant of summary judgment in favor of plaintiff and respondent Delta Dental Plan of California (Delta).

The essential question presented is whether Delta's determination as to what constitutes the usual, customary and reasonable fees for certain dental procedures by its participating dentists is final and binding, or whether Delta's internal decision is subject to judicial review by way of administrative mandamus. (Code Civ. Proc., § 1094.5.)[1]

Because the dentists are entitled to fair procedure, they are entitled to seek judicial review of Delta's decision. The judgment therefore is modified and as modified is affirmed.

### Factual and Procedural Background

Delta is a nonprofit California corporation. It is the largest dental health plan in California, covering over 8,000,000 individuals.[2] It contracts with dentists throughout California to provide services to patients covered by Delta dental plans. Dentists who sign such contracts with Delta are members of Delta's panel of participating dentists.

Banasky and Van Horn are dentists who signed confidential fee listing and participating dentist agreements with Delta. In these agreements, they agreed to be bound by the Delta participating dentists rules (the Rules) and to list their usual, customary and reasonable fees for certain dental procedures. If accepted by Delta, the listed fees are used by Delta to calculate payments of claims submitted by participating dentists for patients covered by Delta dental plans.

Delta learned Banasky and Van Horn also were associated with SmileCare Dental Group (SmileCare). Delta determined henceforth it would pay the dentists' claims based on the usual fees of SmileCare's offices which were less.

In a February 23, 1990, letter, Delta informed Banasky and Van Horn it would be paying lesser fees to them than those appearing in their fee listings

---

[1]All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

[2]The parties stipulated to this figure at oral argument.

in their agreement with Delta. Delta enclosed a copy of its policies and rules governing Delta participating dentists which explained the dentists' rights to review of Delta's determination.

By a letter dated March 5, 1990, the dentists' attorney invoked Delta's internal administrative review procedure which governs disputes regarding " 'usual, customary and reasonable' " fees. However, the dentists did not thereafter present evidence refuting Delta's stated grounds for its action in reducing their usual fees.

On August 10, 1990, the dentists filed a demand for arbitration with the American Arbitration Association (AAA) in Los Angeles.

On August 30, 1990, Delta filed an objection to AAA jurisdiction. Delta maintained pursuant to its bylaws, the board of directors had adopted policies which required the dentists to submit their dispute with Delta regarding " 'usual, customary and reasonable' " fees to the in-house review procedure established in the policies.

On August 31, 1990, Delta sent the dentists' counsel a letter stating the dentists had failed to present any evidence they operated separately from SmileCare. Therefore, Delta's determination to pay the dentists' claims based on SmileCare's usual fees would stand.

In this letter, Delta also stated it had replaced the old policies which had governed the dentists' fee arrangement with Delta with the enclosed new membership action policies and procedures (Membership Procedures). Delta advised counsel that if the dentists so desired, they would be permitted to appeal to the membership action committee (Committee) in accordance with the new Membership Procedures.

On September 13, 1990, the dentists requested the AAA to stay the arbitration because the parties disagreed as to whether the arbitration demand was proper.

On September 14, 1990, the dentists requested an appeal to the Committee. However, the dentists specifically declined to exercise their right to request a hearing before the Committee.

On October 1, 1990, Delta forwarded to the Committee various materials, including written evidence in support of its original determination as to the dentists' usual fees. Under the Membership Procedures, the Committee's decision is final and binding.

On October 25, 1990, the Committee indicated to the dentists their appeal had been denied on the ground they had failed to refute the factual basis underlying Delta's determination.

On December 6, 1990, the dentists demanded the AAA proceed with the arbitration.

Delta again objected to the demand on the ground arbitration was not the appropriate forum for resolving disputes regarding participating dentists' fees.

The AAA advised the parties it would resume the arbitration unless there were a court order staying arbitration.

On January 9, 1991, Delta filed a complaint for declaratory and injunctive relief. Delta sought a declaration as to whether the dispute was within the scope of the arbitration provision contained in Rule 6.[3] Delta also sought to enjoin the dentists from submitting to arbitration the dispute concerning Delta's February 23, 1990, determination.

Delta moved for a preliminary injunction.

The application was granted in part and denied in part. The trial court enjoined arbitration of any matter relating to Delta's decision regarding the amount to be paid to the dentists in the future, i.e., from the effective date of Delta's decision. It imposed no restraint on arbitration regarding any matter relating to Delta's decision to make retrospective adjustments with respect to monies already paid to the dentists.

The trial court observed: "Delta's decision retroactively and prospectively to reduce defendants' fees for services provided to Delta plan members embraces two effects: (a) it would involve defendants' disgorgement of compensation they have already received, . . . ; and (b) it would in effect mark down the compensation which Delta will pay to defendants in the future." The retroactive aspect of Delta's decision was "functionally equivalent to a civil money judgment." Delta did not "have the power to make binding adjudications regarding vested economic interests in such a way as to leave provider dentists without recourse to an impartial external adjudicatory process. Hence, Rule 6—whether supplemented by the June 1990

---

[3]Rule 6 of the Rules stated in relevant part: *"Unless some different procedure is provided by these Rules or by the Bylaws of Delta,* any controversy or claim arising out of or relating to a Delta prepaid dental care program or agreement, or the breach thereof by and between Delta, a participating dentist, an eligible patient, or any of them, shall be settled by arbitration by a single arbitrator."

. . . [Membership Procedures] or not—does not bar arbitration." On the other hand, "[t]he impact on the amount to be paid in the future, however, prospective in application and effect, is essentially similar to any price-setting transaction between a provider of goods or services and a payor for those goods or services. . . . If defendants are dissatisfied with the amount which Delta is willing to pay, defendants need simply discontinue rendering services. That is a business decision for them to make, just as Delta made the decision about what the proper level of compensation in [the] future would be. That is precisely the type of dispute to which the preclusive effect of Rule 6 applies."

In reliance on the ruling on the preliminary injunction, Delta moved for summary judgment. It contended the dentists should be enjoined permanently from submitting to any forum their claims as to compensation after February 23, 1990, the date the dentists initially were notified of Delta's determination to reduce their future payments.

The dentists opposed summary judgment, contending, inter alia, Delta's internal review procedures were not final and binding.

The trial court granted Delta's motion. The minute order stated Delta had established that pursuant to Rule 6 of the Rules, to which the dentists were signatories, the action was not subject to arbitration. Further, the dentists had agreed to be bound by the Rules and all amendments of which they had notice. They had notice of the amended Membership Procedures and requested an appeal to the Committee. Delta complied with the rules relating to such an appeal. The Membership Procedures provide that following an appeal to the Committee, the Committee's decision is binding upon the parties and there is no further right to administrative review or appeal. The effective date of Delta's decision was October 25, 1990, the date of the Committee's decision.

Thereafter, the trial court denied the dentists' motion for reconsideration. It then entered summary judgment for Delta, enjoining the dentists "from submitting to arbitration . . . and from seeking any other review, of any matter relating to the February, 1990 determination of . . . Delta to pay [the dentists] according to the usual fees paid for SmileCare or the March, 1990 implementation of that decision[.]"

The dentists appealed the judgment.

## CONTENTIONS

The dentists contend the matter is arbitrable, and, even assuming the dispute is not subject to arbitration, Delta's internal review procedure is unenforceable as a matter of law.

DISCUSSION

1. *Trial court properly held the dispute was not arbitrable under Rule 6.*

 Preliminarily, we dispose of the dentists' contention the instant dispute as to usual, customary and reasonable fees is arbitrable. Because " '[a]rbitration is recognized as a matter of contract, and a party cannot be forced to arbitrate something in the absence of an agreement to do so' " (*Chan* v. *Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 640 [223 Cal.Rptr. 838]), the terms of the agreement are controlling.

As indicated, Rule 6 states: "*Unless some different procedure is provided by these Rules or by the Bylaws of Delta*, any controversy or claim arising out of or relating to a Delta prepaid dental care program or agreement, or the breach thereof by and between Delta, a participating dentist, an eligible patient, or any of them, shall be settled by arbitration by a single arbitrator."

Here, a different procedure was provided by the Rules. Rule 5 states in part: "A participating dentist and Delta agree to abide by the decision of a duly constituted Review Committee *with respect to the acceptance of fees filed with Delta as 'Usual, Customary and Reasonable,'* subject to such rights of appeal as may be provided by the rules governing the Review Committee and Delta." (Italics added.)

By providing for an internal review committee to resolve disputes concerning usual, customary and reasonable fees, Rule 5 specifies a "different procedure" for such disputes. Consequently, there is no merit to the dentists' contention this matter falls within the general arbitration provision found in Rule 6.

2. *Because the dentists are entitled to fair procedure, they have the right to seek judicial review under section 1094.5 after exhausting the administrative remedy.*

 The dentists contend even assuming the matter is not arbitrable, Delta's internal review procedure is infirm because Delta cannot adjudicate its own dispute.

No longer contending its internal decision is final and binding, Delta concedes in a supplemental brief that mandamus is the proper avenue of review of administrative decisions of private adjudicatory bodies such as its Committee.

We conclude Delta is required to accord the dentists fair procedure. Thus, irrespective of language in the Membership Procedures that the Committee's

decision is "final and binding," said decision is reviewable by way of administrative mandamus. Given these safeguards, the forum for determining the dentists' usual, customary and reasonable fees is Delta's internal review procedure.

### a. Overview of Delta's internal review mechanism.

Under the Membership Procedures, the procedures summarized below apply to Delta's *modification* of a participating dentist's list of usual fees.[4, 5]

Delta retains the right to modify a dentist's list of usual fees if Delta has reason to believe the list of such fees submitted by a dentist does not represent the dentist's usual, customary and reasonable fees.

Delta may initiate a membership action by mailing written notice of the nature, effective date and factual basis for the membership action, at least 15 days before the effective date thereof. The notice shall advise the dentist that Delta shall review and consider any written evidence presented to refute the basis for the membership action.

Within 45 days of receiving such evidence, Delta's president is required to render a written decision to be mailed to the dentist. The decision shall overrule or modify the membership action only if the dentist has refuted the factual basis for the membership action with acceptable documentary evidence.

The dentist may appeal said decision to the Committee by filing notice of appeal within 10 days, along with a written statement of reasons why the dentist disagrees with Delta's decision. The dentist may request the Committee to conduct a hearing. Delta is required to forward to the Committee its written evidence in support of the membership action, the written evidence previously submitted by the dentist, the decision, the notice of appeal, and the dentist's written contentions. The Committee decides by majority vote whether to hold a hearing.

The Committee consists of three corporate members or dentist members appointed by the chairman of the board. In the event the Committee decides

---

[4]We note these procedures apply to Delta's modification of a participating dentist's list of usual fees, not to a claim by Delta against the dentist for disgorgement of excessive fees. Because Delta is not seeking to compel the dentists to disgorge compensation already received, but only to reduce the amounts it would pay the dentists for services to be rendered prospectively, it is unnecessary to discuss the appropriate forum for making retrospective adjustments.

[5]These procedures also apply to other membership actions such as admission to membership, termination of membership, probation of a dentist member, refusal of a participating dentist agreement and/or list of usual fees, and termination of a participating dentist agreement.

not to hold a hearing, the Committee must issue a written decision within 45 days of the date of the notice of appeal. If the Committee proceeds with a hearing, it considers the written evidence previously submitted as well as any additional evidence offered at the hearing, and issues a written decision within five days of the close of the hearing. In either case, the decision of the Committee "*shall be final and binding upon Delta and the [dentist] and there shall be no further right to administrative review or appeal.*" (Paragraphs 8 and 9, Membership Procedures, italics added.)

The issue becomes whether the Committee's decision is subject to judicial scrutiny, notwithstanding this provision in the Membership Procedures to the contrary.

 b. *Delta is required to accord the dentists fair procedure.*

■ "California courts have long recognized a common law right to fair procedure protecting individuals from arbitrary exclusion or expulsion from private organizations which control *important economic interests* [citations] . . . ." (*Applebaum* v. *Board of Directors* (1980) 104 Cal.App.3d 648, 656 [163 Cal.Rptr. 831], italics added; accord, *Rosenblit* v. *Superior Court* (1991) 231 Cal.App.3d 1434, 1445 [282 Cal.Rptr. 819].) Fair procedure comes into play where private organizations are " 'tinged with public stature or purpose' " or attain a " 'quasi-public significance,' " as contrasted with purely private associations which have no larger " 'purpose or stature than pleasant, friendly and congenial social relationships.' [Citation.]" (*Salkin* v. *California Dental Assn.* (1986) 176 Cal.App.3d 1118, 1125 [224 Cal.Rptr. 352].) Further, the right to fair procedure with respect to membership actions is not limited to matters of exclusion or expulsion. (See, e.g., *Salkin, supra,* at pp. 1123-1125 [imposition of public censure]; *Ironwood Owners Assn. IX* v. *Solomon* (1986) 178 Cal.App.3d 766, 771-772 [224 Cal.Rptr. 352] [enforcement by homeowners association of landscaping restrictions].)

■ Delta controls an important economic interest as the largest dental health plan in California, covering over 8,000,000 individuals. Therefore, continued membership on Delta's panel of participating dentists, and Delta's modification of a participating dentist's list of usual, customary and reasonable fees, implicate the right to fair procedure.

 c. *Right to fair procedure includes judicial review of the Committee's decision pursuant to section 1094.5.*

In view of the dentists' right to fair procedure, we examine whether section 1094.5 applies to the adjudicatory decision of a private organization such as Delta.

In *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 815-816 [140 Cal.Rptr. 442, 567 P.2d 1162], the Supreme Court stated: "It has been widely assumed that mandate review via section 1094.5 is available only with respect to administrative decisions by *governmental* agencies. However, we find nothing in the statutory language or supporting legislative materials which would lead us to accept that assumption as warranted. Section 1094.5 . . . is by its terms made applicable to '*any final administrative order or decision* made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the *inferior tribunal, corporation, board or officer* . . . .' Clearly this language is not limited . . . to governmental as opposed to nongovernmental agencies." *Anton* concluded section 1094.5 was intended to apply "*in all cases in which the subject decision is the product of a proceeding in which a hearing and related procedural protections are required by law.*" (*Id.*, at p. 817.)

Thus, for example, pursuant to *Anton*, an officer of a trade union who was removed from office following proceedings conducted by a committee was entitled to judicial review by way of administrative mandamus under section 1094.5. (*Bray* v. *International Molders & Allied Workers Union* (1984) 155 Cal.App.3d 608, 615-617 [202 Cal.Rptr. 269]; see also *Wallin* v. *Vienna Sausage Manufacturing Co.* (1984) 156 Cal.App.3d 1051, 1055 [203 Cal.Rptr. 375].)

Here, Delta is required by law to accord its participating dentists fair procedure. What constitutes fair procedure is not fixed or judicially pre-scribed, but the basic ingredients include notice and a hearing, even if the rules of the association make no provision therefor. (*Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 555 [116 Cal.Rptr. 245, 526 P.2d 253]; *Salkin* v. *California Dental Assn., supra*, 176 Cal.App.3d at p. 1123.) Because Delta's Committee's decision must be pursuant to a hearing, which contemplates the receiving of evidence and the vesting of discretion in a trier of fact, Delta's decision is subject to judicial review pursuant to section 1094.5. (*Anton* v. *San Antonio Community Hosp., supra*, 19 Cal.3d at p. 816.)

Given these procedural safeguards, we conclude the forum for determin-ing the dentists' usual, customary and reasonable fees is Delta's internal review procedure.

3. *Remaining issues.*

a. *Judgment is overbroad.*

Because the instant dispute is not arbitrable, the judgment properly enjoins the dentists from submitting the matter to arbitration.

However, in view of the applicability of section 1094.5, the judgment is overbroad to the extent it bars the dentists "from seeking any other review" of Delta's February 1990 determination as to the dentists' usual fees. That provision must be stricken.

### b. *Further proceedings.*

■ The dentists consistently have maintained Delta's internal review mechanism is invalid because it makes Delta the final arbiter of its own dispute. Consequently, they resisted submitting to Delta's internal review procedure.

Delta continually took the position its decision in this regard was final and binding, without any further right to administrative review or to appeal. It was only upon the filing of supplemental briefs at this court's request that Delta sharply changed its position to argue its internal decision is subject to administrative mandamus review.

It now has been determined the provision in Delta's Membership Procedures declaring its internal decision "final and binding" is ineffective. Given the resolution of that issue, the dentists may avail themselves of Delta's internal review procedure to challenge the February 1990 determination as to their list of usual fees. Upon exhausting the administrative remedy, the dentists may seek review by way of administrative mandamus, if necessary.

### c. *The dentists' allegation of bias unsupported.*

Despite the availability of mandamus review, the dentists still contend Delta's internal review procedure is infirm because Delta lacks the disinterestedness and impartiality necessary to act in a judicial or quasi-judicial capacity. The argument is unavailing. Delta is required to accord the dentists procedural fairness. In the event Delta violates the dentists' fair procedure rights to an impartial tribunal, the dentists may raise the issue on a petition for writ of administrative mandate. (*Applebaum* v. *Board of Directors, supra,* 104 Cal.App.3d at pp. 654, 657.) At this juncture, we cannot presume Delta's decisionmakers will be biased.[6, 7]

---

[6]It was Delta's initial and primary responsibility to devise a procedure which gives the dentists a fair opportunity to present their position. (*Pinsker* v. *Pacific Coast Society of Orthodontists, supra,* 12 Cal.3d at p. 555.) We do not address whether the particular procedures adopted by Delta comport with fair procedure, as that issue is not before us.

[7]We are aware of Health and Safety Code section 1371.2, which was enacted in 1992 and states: "No health care service plan, including a specialized health care service plan, shall request reimbursement for overpayment or reduce the level of payment to a provider *based*

## DISPOSITION

The judgment is affirmed to the extent it bars the dentists from submitting the instant dispute to arbitration. The judgment is modified to delete the provision barring the dentists from seeking any review of Delta's February 1990 determination as to their usual fees. The dentists may challenge that determination through Delta's internal review procedure and by way of a petition for writ of administrative mandate, if necessary.

The dentists to recover costs on appeal.

Croskey, J., and Kitching, J., concurred.

---

*solely on the allegation that the provider has entered into a contract with any other licensed health care service plan* for participation in a benefit plan that has been approved by the commissioner." (Italics added.) However, it is unnecessary to discuss the impact of this statute on this fact situation, which predates the enactment of the statute. Moreover, the issue presented by this appeal is whether Delta's determination as to usual, customary and reasonable fees is final and binding or subject to administrative mandamus review.