Filed 8/28/19

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ABDULMOUTI ALAAMA, | B288360 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC634219) |
| v. | |
| PRESBYTERIAN INTERCOMMUNITY HOSPITAL, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Reversed and remanded with directions.

Alan I. Kaplan for Plaintiff and Appellant.

Baker & Hostetler, Mark A. Kadzielski and Joelle A. Berle for Defendants and Respondents.

_____

# INTRODUCTION

Business and Professions Code section 809.1[1] requires a hospital peer review board to give a physician notice and the right to request a hearing when the hospital revokes or terminates the physician's membership, staff privileges, or employment for a "medical disciplinary cause or reason." In 2016 Presbyterian Intercommunity Hospital, Inc., doing business as PIH Health Hospital-Whittier, and PIH Health Physicians (collectively, the hospital) terminated Dr. Abdulmouti Alaama's privileges and staff membership without giving him a hearing. Dr. Alaama filed a complaint that included causes of action seeking a writ of administrative mandate, alleging, among other things, the hospital denied him the right to a hearing before terminating his privileges. The trial court denied the petition. Because the hospital terminated Dr. Alaama's privileges and staff membership for a "medical disciplinary cause or reason," we reverse.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Dr. Alaama Misbehaves in the Hospital*

Dr. Alaama was not always on his best behavior. In April 2008 the hospital warned Dr. Alaama that he had to work cooperatively with doctors, nurses, and staff at the hospital and that he would be subject to discipline if he yelled at, verbally abused, or displayed any "physically inappropriate and

---

[1] Undesignated statutory references are to the Business and Professions Code.

unprofessional behavior" toward hospital patients or employees. In August 2010 the hospital placed Dr. Alaama on probation for one year "because of his inappropriate and unprofessional behavior directed towards an anesthesiologist and the nursing staff" during a medical procedure.

But things did not improve. In March 2012 Dr. Alaama "yelled, verbally abused, physically hit, and displayed physically inappropriate and unprofessional behavior" toward a hospital employee. In April 2012 he "continued with a procedure on a patient whose blood pressure remained dangerously high, despite repeated requests by the anesthesiologist to abort the procedure." Dr. Alaama acknowledged he had "a pattern of engaging in unprofessional, disruptive, and harassing behavior."

### B. *Dr. Alaama Signs a Behavioral Agreement*
In April 2012 Dr. Alaama signed a written contract with the hospital titled "Behavioral Agreement," in which he agreed to comply "in all respects" with the medical staff and hospital bylaws, rules, regulations, and policies. As a condition to retaining his medical privileges at the hospital, Dr. Alaama agreed to comply with a list of "Specific Behavioral Requirements." For example, Dr. Alaama agreed not to "make any demeaning, discourteous, disrespectful, harassing, or profane statements, requests or demands" to any of the nurses, administrative staff members, or other employees at the hospital, including "name calling, profanity, sexual comments or innuendos, and/or racial, ethnic, or sexual jokes." He also agreed not to "shout or otherwise raise his voice, act in an aggressive or abrasive manner, or engage in any type of verbally abusive behavior," including when he responded to anyone who called to

discuss patient issues or concerns.  He further agreed not to criticize anyone at the hospital "in front of or within earshot of" anyone else, including making "disparaging statements regarding an individual's professional competence, comments that undermine a patient's trust in other caregivers at [the hospital], and/or comments that undermine a caregiver's self-confidence in caring for patients."  And he agreed not to "touch, hit, slap or otherwise engage in any physical behavior with" anyone at the hospital, including "touching, punching, slapping, pushing, shoving, smacking, inappropriate touching and/or throwing instruments, charts, or other objects."

Of particular relevance to this action, Dr. Alaama agreed in paragraph 2.6 of the Behavioral Agreement that he would "be readily available and exercise professional courtesy when called upon to discuss a patient's course of treatment or medical care" and that he would "not exhibit any other inappropriate, unprofessional, abusive or harassing behavior" on the hospital's premises, such as failing "to address the safety concerns or patient care needs expressed by another caregiver" or failing "to work collaboratively with other caregivers" at the hospital.  He also agreed in paragraph 2.8 of the agreement not to retaliate or threaten to retaliate against anyone who reported behavior by him that violated the agreement or the hospital bylaws, rules, regulations, or policies.  Dr. Alaama also acknowledged he understood any further failure to comply with the standards of the hospital medical staff would result in the "automatic termination" of his medical staff privileges.  The Behavioral Agreement provided in paragraph 4.3 that, upon a finding by the hospital medical executive committee Dr. Alaama violated the agreement or hospital rules and regulations, his privileges would

4

be "automatically terminated." Dr. Alaama agreed any "such automatic termination shall not give rise to any substantive or procedural rights under California Law" or the hospital's bylaws. The parties further agreed the Behavioral Agreement, "in and of itself, does not require that a report be made to the Medical Board of California or any other federal or state agency."

C.    *Dr. Alaama Misbehaves in the Hospital Again*

And yet, things did not improve. In particular, an incident occurred in November 2015 that gave rise to the termination of Dr. Alaama's privileges at the hospital and, ultimately, this litigation.

A hospital patient was lying in a bed on his stomach, "profusely vomiting" with his "face changing to shades of purple," after an endoscopic retrograde cholangiopancreatography procedure. Two nurses and a gastrointestinal technician each asked Dr. Alaama to move a cart where he was "documenting" so they could move a bed into the room and turn over the patient. Dr. Alaama "responded to each request with words to the effect of, 'No, they can wait.'" According to the nurses, Dr. Alaama motioned with his left hand and waved away the nurses and technicians without looking up from the computer screen he was working at on the cart, as though he did not want to be bothered, and "barked" repeatedly, "[T]ell them to wait." One of the nurses said that Dr. Alaama "showed no concern" for the patient's needs and put "himself first instead of the patient's needs" and that "Dr. Alaama's conduct (focusing on his documentation and his lack of cooperation) prevented staff from properly taking care of the patient's needs." The other nurse said Dr. Alaama did not properly address the patient's needs, did not work collaboratively

5

with the staff, and did "what he wanted to do" without listening to the nurses.  After Dr. Alaama learned one of the nurses had reported the incident, he asked the hospital not to assign that nurse to his cases.

The hospital's medical executive committee met in early December 2015 to consider what to do about the November 2015 incident, as well as six other complaints filed against Dr. Alaama between May 2013 and November 2015.  The courses of action the committee considered included requiring Dr. Alaama to receive "behavior modification counseling" or take a "late career practitioner examination," updating the Behavioral Agreement to include additional instances of misconduct and requiring Dr. Alaama to "newly acknowledge his willingness to change," and deciding there were "already enough medical and behavioral misadventure to proceed with termination from the medical staff based upon article 4.3 . . . of the Behavioral Agreement."  The committee also discussed "a number of anecdotal claims concerning poor interaction with other physicians/staff, questions regarding medical [judgment]/appropriateness of care given," and "other potential care issues."  The committee observed that Dr. Alaama's behavior "could be creating a 'hostile workplace environment,'" that he had "a long history of verbal abuse and intimidation of hospital employees," and that he had failed to correct behavior he acknowledged was unacceptable.

A report prepared by the hospital's human resource department regarding the November 2015 incident stated the nurses and technician "were concerned for patient safety and were acting on [the anesthesiologist's] comments to get the patient a bed and get him on his back."  The report concluded Dr. Alaama may have violated paragraph 2.6 of the Behavioral

6

Agreement by failing to address the safety concerns or patient care needs expressed by other caregivers and paragraph 2.8 by retaliating against one of the nurses who reported the November 2015 incident.

D. *The Hospital Terminates Dr. Alaama's Hospital Staff Privileges and Membership*

The hospital's medical executive committee met again in January 2016 and considered the report. The committee members approved a motion finding Dr. Alaama had violated paragraphs 2.6 and 2.8 of the Behavioral Agreement and terminated his medical privileges at the hospital.

The next day the president and chief of staff of the hospital wrote Dr. Alaama and informed him of the medical executive committee's decision. This letter stated the committee found Dr. Alaama's conduct in the November 2015 incident violated paragraph 2.6 of the Behavioral Agreement by failing to address safety concerns and patient care needs expressed by staff and failing to work collaboratively with operating room staff. The letter also stated the committee found Dr. Alaama violated paragraph 2.8 of the Behavioral Agreement by retaliating against the nurse who had reported the incident by "requesting that the nurse not be scheduled to work on [his] cases in the future." The letter concluded by quoting paragraph 4.3 of the Behavioral Agreement and stating "this termination is immediate, and does not give rise to any substantive or procedural rights under California law or the [hospital] Bylaws. Further, because this action has not been taken for a 'medical disciplinary cause or reason,' as that term is defined at California Business and

7

Professions Code Section 805, no report will be filed with the Medical Board of California."

E.  *Dr. Alaama Files This Action*

Dr. Alaama filed this action in September 2016, asserting two causes of action titled "administrative mandate," one alleging the hospital did not give him a hearing and one seeking a judicial determination the Behavioral Agreement was unenforceable. Dr. Alaama also alleged causes of action for injunctive relief, defamation, and violation of the Americans with Disabilities Act. The case was transferred from the individual calendar court to the writs and receivers department for a hearing on the request for a writ of administrative mandate, and the latter court set the matter for trial and stayed all causes of action other than the petition for writ of mandate.[2]

F.  *The Trial Court Denies Dr. Alaama's Petition for Writ of Administrative Mandate*

Dr. Alaama argued he was entitled to a writ of administrative mandate directing the hospital to restore his privileges "until he has been granted a hearing to determine whether he has in fact violated" the Behavioral Agreement.  He also argued the waiver of his procedural and substantive rights in the agreement was unenforceable under applicable provisions of the Business and Professions Code.  Dr. Alaama claimed it was "undisputed that he was not accorded a fair hearing, or

---

[2]  We augment the record to include the complaint and the court's February 15, 2017 and February 17, 2017 minute orders. (See Cal. Rules of Court, rule 8.155(a)(1)(A).)

indeed any hearing, under [the hospital's] bylaws or under California law."

The hospital argued "no administrative peer review hearing was required under the circumstances, as [the hospital] did not terminate Dr. Alaama's staff membership or privileges for a reportable 'medical disciplinary cause or reason,'" which would require a hearing, but instead terminated his privileges "for breach of the Behavioral Agreement," which did not. According to the hospital, because Dr. Alaama lost his privileges because of his "abusive and harassing behavior toward other physicians, nurses, and Hospital employees," the statutory prohibition of "contractual waiver of peer review rights" did not apply. The hospital contended a physician had a right to a hearing only when a peer review body takes action that must be reported to the California Medical Board, and because Dr. Alaama's termination for bad behavior was not a reportable event, he was not entitled to a hearing.

At the hearing, the trial court stated the "threshold issue" was whether the hospital could "terminate Dr. Alaama without a hearing for breach of the [Behavioral Agreement]." The trial court stated, "[Y]es, it can. If he was terminated for non-medical reasons involving abusive or harassing behavior, then it would be for breach of the agreement and he's not entitled to a hearing." The problem the court expressed, however, was that it did not "see abusive or harassing behavior" by Dr. Alaama. The court therefore stated its tentative ruling was the November 2015 incident "cannot be described as harassing or abusive treatment of the nurses as that term in commonly understood. As found by the [medical executive committee, Dr.] Alaama simply refused on multiple occasions to move from the cart where he was writing,

9

thereby placing his paperwork before the patient's medical care," which was a reportable medical disciplinary cause or reason, which required a hearing. The court also found Dr. Alaama's request the hospital not schedule a nurse to work with him was not retaliation because "there is nothing wrong with a request not to work with one's accuser."

The court, however, changed its mind during the course of the hearing. The court stated that, if the nurses raised a concern, and Dr. Alaama "just blew them off, then that would be a [failure]-to-address safety concerns raised by the nurses." Thus, the court stated, it did not matter whether the concerns expressed by the nurses were "correct. If they raised an issue to Dr. Alaama and he failed to address it, that is breach of the agreement," even if the nurses' concerns were not legitimate. The court explained, "They are accusing him of harassment," which was "defined under the agreement as failing to respond to a nurse's concern about patient needs and safety. That is, [it] doesn't matter whether they're right or wrong. If . . . they raise an issue and he doesn't respond to them, that is considered harassment under the agreement. It doesn't matter whether he actually was causing a safety issue or patient care issue." The court ruled the Behavioral Agreement provided that "if you fail to address an issue of patient care raised by a nurse, whether or not it's true, you're guilty of harassing behavior . . . . I'm withdrawing my tentative. The petition's denied."

The court subsequently filed a written order denying the petition for writ of mandate and dismissing with prejudice Dr. Alaama's two causes of action for administrative mandate. The court stated in its written order: "The Court finds that the evidence in the administrative record establishes that

10

[Dr. Alaama] was terminated for a non-medical disciplinary cause or reason because [his] termination was for breach of [paragraph 2.6] the Behavioral Agreement. . . . Thus, [Dr. Alaama] was not entitled to a hearing pursuant to . . . section 809.1."

## DISCUSSION

A.  *The Trial Court's Order Denying the Petition for Writ of Administrative Mandate Is Appealable*

The hospital argues the trial court's order denying Dr. Alaama's petition for administrative mandate is "not appealable because there remain three causes of action pending," namely, Dr. Alaama's causes of action for injunctive relief, defamation, and violation of the Americans with Disabilities Act. Although the hospital acknowledges Dr. Alaama dismissed those causes of action without prejudice, the hospital argues "a dismissal *without prejudice* is insufficient because it does not create a final judgment from which an appeal may be made . . . ." According to the hospital, because Dr. Alaama "is still able to revive his remaining causes of action," the trial court's order denying Dr. Alaama's petition "did not create a final judgment subject to appeal."

Well, yes and no. A voluntary dismissal, "unaccompanied by any agreement for future litigation, does create sufficient finality as to that cause of action so as to allow appeal from a judgment disposing of the other counts. [Citation.] That is because 'a party's voluntary dismissal without prejudice does not come equipped by law with an automatic tolling or waiver of all relevant limitations periods; instead, such a dismissal includes

11

the very real risk that an applicable statute of limitations will run before the party is in a position to renew the dismissed cause of action.'" (*Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1105-1106; see *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 589, fn. 6 ["Because the record does not indicate the dismissal was accompanied by any agreement for future litigation, the judgment is sufficiently final to be appealable."]; *Walters v. Boosinger* (2016) 2 Cal.App.5th 421, 427, fn. 5 [dismissal without prejudice that "was not accompanied by any agreement between the parties regarding future litigation" was sufficient to "render the judgment appealable"]; *Abatti v. Imperial Irrigation Dist.* (2012) 205 Cal.App.4th 650, 665 ["claims that are dismissed without prejudice are no less final for purposes of the one final judgment rule than are adjudicated claims, unless . . . there is a stipulation between the parties that facilitates potential future litigation of the dismissed claims"].)

There is no evidence or suggestion in the record of any agreement for future litigation. To the contrary, Dr. Alaama states he "waived [his] right to litigate the unresolved causes of action." Thus, the problem is not that Dr. Alaama dismissed the three causes of action without prejudice. The problem is that he dismissed the three causes of action after he filed a notice of appeal. But even so, the trial court had jurisdiction to dismiss the three remaining causes of action. (See *Holloway v. Quetel* (2015) 242 Cal.App.4th 1425, 1431, fn. 6 ["[a]n appeal from a nonappealable order does not divest the trial court of jurisdiction"].)

In any event, in his reply brief on appeal, Dr. Alaama agreed to treat his requested dismissal of the three unadjudicated causes of action as a request for dismissal with prejudice. "When

a party expressly waives on appeal the right to litigate an unresolved cause of action that deprived the judgment as entered of finality, the appellate court may give effect to the waiver by amending the judgment to reflect a dismissal of that cause of action with prejudice." (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 308-309; accord, *Areso v. CarMax, Inc.* (2011) 195 Cal.App.4th 996, 1002.)[3]

> B.    *The Hospital Failed To Give Dr. Alaama a Hearing as Required by Section 809.1*

>    1.    *Standard of Review*

The hospital contends Code of Civil Procedure section 1085 governing traditional mandate applies to Dr. Alaama's petition because "this case involves a dispute over a contract." Even if it did not, the hospital's position finds support in *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 531 (*Mileikowsky*), overruled on a different ground in *Mileikowsky v. West Hills Hospital & Medical Center* (2009) 45 Cal.4th 1259, 1273, where the court stated that "[f]ailure to provide a hearing required by law or regulation is remedied by a petition for traditional mandate." (*Mileikowsky*, at p. 554.) Dr. Alaama contends Code of Civil Procedure section 1094.5 governing administrative mandate applies to "the quasi-adjudicative decisions of private hospital boards," including the hospital's decision to terminate his staff privileges and membership without giving him a hearing. (See Code Civ. Proc., § 1094.5, subd. (a) [statute applies where a "writ is issued for the purpose of inquiring into the

---

[3]    We also treat the trial court's order as a final and appealable determination of the rights of the parties.

13

validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given"]; *Delta Dental Plan v. Banasky* (1994) 27 Cal.App.4th 1598, 1608 ["section 1094.5 . . . was intended to apply in all cases where the subject decision is the product of a proceeding in which a hearing and related procedural protections are required by law,'" italics omitted].)

Under either statute, however, we independently review the issue "whether the hospital's determination was made according to a fair procedure."  (*Ellison v. Sequoia Health Services* (2010) 183 Cal.App.4th 1486, 1496; see *Golden Day Schools, Inc. v. Office of Administrative Hearings* (2017) 8 Cal.App.5th 1012, 1020 [in mandamus proceedings "'pure issues of law are always subject to independent appellate court review'"].)  We also review de novo the application of a statute to a set of an undisputed facts.  (*Department of Health Care Services v. Office of Administrative Hearings* (2016) 6 Cal.App.5th 120, 141; *M & B Construction v. Yuba County Water Agency* (1999) 68 Cal.App.4th 1353, 1359.)

> 2. *The Hospital Terminated Dr. Alaama's Privileges and Membership for a "Medical Disciplinary Cause or Reason"*

Once a hospital appoints a physician to its medical staff, the hospital may not take away the physician's privileges or terminate his or her staff membership "'absent a hearing and other procedural prerequisites consistent with minimal due process protections.'" (*Sahlolbei v. Providence Healthcare, Inc.* (2003) 112 Cal.App.4th 1137, 1146; see *Economy v. Sutter East Bay Hospitals* (2019) 31 Cal.App.5th 1147, 1156 (*Economy*).) Section 809 et seq. set forth a comprehensive procedure

governing adverse action by a hospital against a staff physician. (*Sahlolbei*, at p. 1147.) "This procedure is mandatory for acute care hospitals and must be incorporated into their bylaws." (*Ibid.*; see § 809, subd. (a)(8).) The hospital concedes section 809.1 applies to certain adverse actions against its member physicians but argues the circumstances of Dr. Alaama's termination did not trigger section 809.1's procedural safeguards.

Section 809.1 provides that a physician subject to a final proposed action by a peer review body "for which a report is required to be filed under Section 805" is entitled to written notice of the action and to request a hearing. (§ 809.1, subds. (a), (b)(3).) Section 805 requires that an officer, director, or peer review administrator of a licensed health care center or clinic must file a report with the applicable licensing agency when a physician's membership, staff privileges, or employment is terminated or revoked for a "medical disciplinary cause or reason." (§ 805, subd. (b)(2).) "'Medical disciplinary cause or reason' means that aspect of a [physician's] competence or professional conduct that is reasonably likely to be detrimental to patient safety or to the delivery of patient care." (§ 805, subd. (a)(6).) Section 809.6, subdivision (c), provides that the requirements of section 809.1 "may not be waived in [any applicable agreement or contract between the licentiate and health care entity] for a final proposed action for which a report is required to be filed under Section 805."

As stated, the medical executive committee terminated Dr. Alaama's privileges and staff membership for two reasons, one of which was Dr. Alaama's "fail[ure] to address the safety concerns and patient care needs expressed by . . . the operating room staff" in November 2015. The letter to Dr. Alaama from the chief of staff explained that Dr. Alaama violated section 2.6 of the Behavioral Agreement by, among other things, inhibiting the

15

hospital staff from providing a bed for a vomiting patient. Such conduct falls squarely within the definition in section 805 of "medical disciplinary cause or reason," which includes a physician's "professional conduct that is reasonably likely to be detrimental . . . to the delivery of patient care." (§ 805, subd. (a)(6).) By blocking hospital staff from moving a bed into position for the patient, Dr. Alaama prevented the staff from delivering patient care, which under the statute is a medical disciplinary cause or reason. Thus, Dr. Alaama's conduct triggered the mandatory reporting requirement of section 805, which, in turn, gave Dr. Alaama the right to a hearing under section 809.1. (See § 805, subd. (b)(2); § 809.1, subds. (a), (b)(3).)

The hospital argues it terminated Dr. Alaama "because of his inappropriate, unprofessional, abusive and harassing behavior toward physicians, nurses, and Hospital employees in the workplace when he 'failed to address patient care concerns that were *expressed* to him by staff' . . . ." Attempting to distinguish Dr. Alaama's conduct from conduct that amounts to a "medical disciplinary cause or reason," the hospital places great significance (as did the trial court) on the fact Dr. Alaama failed to respond to "expressed" concerns about patient care. The hospital argues Dr. Alaama's "disregard of multiple caregivers' *expressions* of patient care concern did not rise to the level of conduct that was detrimental to the patient's safety or delivery of patient care." The hospital cites its investigator's interview with the anesthesiologist involved in the November 2015 incident, who said Dr. Alaama's conduct "was not detrimental to the patient's safety because the patient was oxygenating well despite the fact that the patient was vomiting." The hospital also cites Dr. Alaama's opening brief on appeal in which he states, "[t]he anesthesiologist does not claim that patient care was an issue." But even if Dr. Alaama's conduct in connection with the

16

November 2015 incident was not detrimental to patient safety, it was detrimental "to the delivery of patient care." (§ 805, subd. (a)(6).) And that, under the statute, is enough.

The hospital also argues it satisfied Dr. Alaama's due process rights by providing a fair procedure conducted by the medical executive committee. But section 809.1 establishes the "minimum procedural standards" for terminating a physician's hospital privileges and membership. (*Economy*, *supra*, 31 Cal.App.5th at p. 1157.) A hospital cannot avoid the requirements of sections 805 and 809.1 by substituting its procedures for those established by the Legislature. (See *Economy*, at p. 1158 [hospital cannot substitute its procedures for section 809.1 because the "plaintiff's right to practice medicine would be substantially restricted without due process and, despite the hospital's concern that plaintiff was endangering patient safety, the state licensing board would never be notified"].)

Finally, the hospital cannot avoid its obligation to afford Dr. Alaama a hearing by enforcing section 4.3 of the Behavioral Agreement, which states that any termination as a result of violating the terms of the agreement does not give rise to any substantive or procedural rights under California law. The hospital argues this provision is enforceable because the circumstances under which the hospital terminated Dr. Alaama's membership did not implicate section 809.1. But because it did, section 4.3 of the Behavioral Agreement is unenforceable. (See § 809.6, subd. (c).)[4]

---

[4] Dr. Alaama does not argue any other provision of the Behavioral Agreement is unenforceable. The hospital does not argue we should affirm the trial court's ruling on the basis of paragraph 2.8 concerning retaliation.

## DISPOSITION

The order denying the petition for administrative mandate is reversed.  The trial court is directed to enter a new order granting Dr. Alaama's petition for mandate requesting a hearing.  Dr. Alaama is to recover his costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.

18

Filed 9/18/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ABDULMOUTI ALAAMA,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>PRESBYTERIAN<br>INTERCOMMUNITY HOSPITAL,<br>INC., et al.,<br><br>　　　Defendants and Respondents. | B288360<br><br>(Los Angeles County<br>Super. Ct. No. BC634219)<br><br>**ORDER MODIFYING AND<br>CERTIFYING OPINION FOR<br>PUBLICATION; NO CHANGE IN<br>APPELLATE JUDGMENT** |

THE COURT:

The opinion filed on August 28, 2019 and not certified for publication, is modified as follows:

On page 17, the text in footnote 4 is deleted and replaced with:

> Dr. Alaama does not argue any other provision of the Behavioral Agreement is unenforceable. Although the hospital in its respondent's brief explains that its medical executive committee found Dr. Alaama violated paragraph 2.8 of the Behavioral Agreement, the trial court did not make that finding, and the hospital does not argue we should affirm the trial court's order on the basis of paragraph 2.8.

The opinion in this case filed August 28, 2019 was not certified for publication. Because the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the non-parties'

requests for publication under California Rules of Court, rule 8.1120(a), are granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the opinion be published in the Official Reports.

Respondents' petition for rehearing is denied.

This order does not change the appellate judgment.

_____

PERLUSS, P. J.               SEGAL, J.               FEUER, J.

2