**John AMBROSINO, D.P.M., Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, et al., Defendants.**

**No. C 94–00990 CW.**

United States District Court,
N.D. California.

June 14, 1995.

Mitchell J. Green, King & Green, San Francisco, CA, for plaintiff.

Richard J. Kilmartin, Knight Boland & Riordan, San Francisco, CA, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

WILKEN, District Judge.

Plaintiff's Motion for Summary Adjudication on his Second, Third and Fourth Causes of Action against Defendant Metropolitan Life Insurance Company was heard by this Court on March 10, 1995. Having considered the papers filed by the parties and oral argument on the motion, and good cause appearing, the Court hereby GRANTS the motion in part and DENIES it in part, as follows.

*Statement of Facts*

Plaintiff Ambrosino, a doctor of podiatric medicine, and Defendant Metropolitan, a corporation which transacts health insurance business, entered into a participating physician agreement in May, 1990. The agreement states that the relationship created by the agreement is intended to be that of independent contractors, and that either party may terminate the agreement with or without cause by giving thirty days' notice to the other party. The agreement recites that it terminates automatically, *inter alia*, if the participating physician is "placed on probation, or reprimanded, or fined" by an agency with disciplinary authority over the physician.

Effective January 21, 1994, Plaintiff was placed on probation for six years by the Board of Podiatric Medicine because of a prior short-term dependency on demerol during the summer of 1991 and his conduct during that period of chemical dependency. This conduct included seeing patients while under the influence of demerol and misusing his prescription authority by using demerol prescribed for his patients. Mitigating circumstances included that the dependency resulted from proper use of demerol for severe gastro-intestinal problems, that Plaintiff had never performed any procedures on a patient while under the influence of demerol, that there was no indication that any patient had been harmed, and that Plaintiff had voluntarily entered a diversion program and had complied fully with the requirements of that program for two years. The probation imposed did not restrict Plaintiff's right to practice or to render patient care. However, it placed Plaintiff under stringent monitoring, including random urine tests to ensure that Plaintiff remained drug-free. Plaintiff was also ordered to pay $4000.00 to compensate the Board for its costs of investigation and prosecution.

Prior to the imposition of probation on Plaintiff, Defendant learned of the pending charges. On or about October 5, 1993, Defendant's Provider Assessment Committee discussed Plaintiff's situation and recommended "delistment" on the basis that Plaintiff had misused demerol while involved in patient care. Network Director Marie Carpenter approved that recommendation. On January 4, 1994, Defendant gave thirty days written notice of its intent to terminate the participating physician agreement with Plaintiff. On January 17, 1994, Plaintiff requested a pre-termination hearing. On February 4, 1994, Defendant refused the request and confirmed the termination.

Defendant maintains written criteria for the retention or termination of health care providers with which it contracts. These criteria provide for termination if the provider is placed on probation, reprimanded, or fined by any state agency in the United States that disciplines health care providers. They also provide for termination if a provider has or has had a chemical dependency/substance abuse problem, whether it is treated or untreated. It is undisputed that both of these criteria were considered in reaching the decision to terminate Plaintiff.

It is further undisputed that Defendant considers a prior chemical dependency prob-

lem alone sufficient grounds for termination in every case, without exception, regardless of the nature of the dependency, successful rehabilitation from it, and/or its remoteness in time. In the words of Defendant's counsel, the absolute bar would apply even to "a baby smoking a marijuana cigarette." The deponent testifying as the representative of Defendant, Network Director Marie Carpenter, confirmed that a physician would be terminated on the basis of substance abuse even if his only abuse was that "as a preadolescent the physician had a chemical dependency arising out of the use of marijuana" which had been successfully treated or overcome without treatment.

In particular, Ms. Carpenter clarified that whether the health care provider's substance abuse had ever resulted in any harm to a patient and whether the health care provider posed any risk to future patients were not considered relevant to the termination decision. In the instant case, Defendant expressly did not consider whether Plaintiff had put patients at risk in the past, nor whether he posed any risk to future patients. Defendant also does not contend that Plaintiff's probationary monitoring program is inadequate to protect patient safety.

This absolute bar imposed on care providers with a history of substance abuse is in contrast to Defendant's treatment of a physician with a history of malpractice. A physician with a history of malpractice is not terminated from participating physician status without an individualized determination of the risk he poses to future patients, based upon such factors as the number of malpractice cases and the period of time in which they arose, as well as an evaluation of the availability of alternative medical care in the area.

Ms. Carpenter also testified on behalf of Defendant that Plaintiff's termination was based solely on the thirty days notice termination provision, not on the automatic termination provision. She further testified that, to her knowledge, no provider had ever been terminated by operation of the automatic termination provision due to the imposition of a sanction by a regulating agency, but only under the thirty day notice provision. Final-

ly, she testified that the automatic termination provision was not in fact automatic, but rather was subject to an explicit procedure allowing Defendant to decide to retain a provider who had been sanctioned.

Ms. Carpenter's testimony on behalf of Defendant is consistent with Defendant's responses to Plaintiff's requests for admissions. Defendant denied that it had either a practice or a policy of terminating the participating physician agreement of every physician placed on probation by a state licensing agency. There is no contrary evidence in the record to the effect that the apparent provision for automatic termination upon imposition of a sanction was in fact considered, treated or utilized as such by Defendant.

Termination of Plaintiff's participating physician status creates a financial incentive for those of his patients insured by Defendant to find a new doctor, since these patients must pay increased deductibles and co-payments if they continue to receive care from him. In addition, other participating physicians in the network are prohibited from referring patients to Plaintiff as a nonparticipating provider unless there is no participating provider available.

*Discussion*

1. *Standard for Summary Judgment*

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, or when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1288–89 (9th Cir.1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Eisenberg,* 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,

587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Accident and Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### 2. *Civil Code § 51.5 Claim*

Plaintiff seeks summary adjudication that Defendant applied the at-will termination provision of its participating physician agreement with Plaintiff in a discriminatory manner based upon his disability, in violation of California Civil Code § 51.5. That statute provides that:

> No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, refuse to buy from, sell to, or trade with any person in this state because of the race, creed, religion, color, national origin, sex, or disability of the person ...

"Disability" is not defined in the statute. The Court accepts Defendant's argument that the applicable definition is that of the Americans with Disabilities Act (ADA), which was imported into two other California statutes in the Chapter which added "disability" to the § 51.5 list of prohibited bases for discrimination. 1992 Statutes, Chapter 913 (Assembly Bill No. 1077). That definition is as follows:

> (A) A physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). The ADA further clarifies the definition by excluding from protected disabilities the current illegal use of drugs, *e.g.*, 42 U.S.C. § 12114(a), while providing that such exclusion does not extend to a person who:

> (1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use; [or] (2) is participating in a supervised rehabilitation program and is no longer engaging in such use ...

*E.g.*, 42 U.S.C. § 12114(b). While the rehabilitation exception to the drug abuse exclusion does not by itself necessarily bring former drug addiction within the definition of disability, former drug addiction appears to meet the definition of "a record of" a serious mental or physical impairment. In addition, the Equal Employment Opportunity Commission's Technical Assistance Manual for the ADA clarifies that "a history of addiction" is intended to be a protected disability under the ADA. A.D.A.T.A.M. § 8.5.

■ It is undisputed that Plaintiff has or is regarded as having a history of chemical dependency. Defendant nevertheless argues that Plaintiff is not disabled because he is currently not impaired: "According to Dr. Ambrosino himself, he is working full time at his profession in an exemplary manner, unimpeded by any impairment whatever." Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Adjudication (Opposition), 9:10–12. This argument, however, fails to take into account that the definition of disability expressly includes having a record of a past impairment or being considered to have an impairment, in addition to having an actual current impairment.

Although Defendant does not concede that Plaintiff is disabled, it proffers no evidence contradicting that during Plaintiff's brief period of chemical dependency, one of his major life activities was impaired by the addiction; the record shows that the addiction impaired the practice of his profession, if only by causing him to abuse his prescription authority and see patients while under the influence of demerol. Nor does Defendant proffer any evidence controverting the obvious fact that Defendant itself considers Plaintiff to be impaired.

■ Defendant next argues that its termination of Plaintiff's participating physician agreement does not constitute discrimination

because the termination occurred automatically through the operation of an agreed-upon clause rather than through any action or decision of Defendant to terminate. This theory would be persuasive were it not for the deposition testimony of Defendant through its corporate representative, Network Director Marie Carpenter. Ms. Carpenter expressly testified that Plaintiff's termination did *not* occur pursuant to the automatic termination clause. She further testified that the automatic termination clause has not been used in any other sanctions case to her knowledge. Finally, she testified that the so-called "automatic" termination was not in fact "automatic," but was subject to waiver. Defendant has proffered no evidence in contradiction to its own testimony on this point, nor has it asserted any argument as to why it should not be bound by its own admissions.[1]

■ Defendant argues that its termination of Plaintiff's participating physician status does not violate § 51.5 because Defendant is not boycotting or blacklisting or refusing to do business with Plaintiff, but will pay him for treatment provided to Defendant's insureds. Clearly, discrimination may consist of actions other than those specifically listed in § 51.5 as prohibited actions in addition to discrimination.

■ Defendant further contends that it is not discriminating against Plaintiff because it is not treating him in any way differently than any other health care provider who is not a participating provider. Defendant misunderstands Plaintiff's claim, which is not that he was treated differently than other providers who are *not* participating providers, but rather that he was treated differently than other providers who *are* participating providers. It is uncontroverted that Plaintiff, and all other providers known to have a past substance abuse problem, in fact are treated differently from other participating providers by Defendant as a matter of policy, in that they are terminated without regard to whether they pose a risk to future patients.

This type of differential treatment based upon past addiction, without regard to whether there is any current effect on the previously addicted person's ability to practice his profession competently, has been held to violate the Rehabilitation Act's prohibition of discrimination based on disability. *Nisperos v. Buck,* 720 F.Supp. 1424 (N.D.Cal. 1989), *aff'd by Nisperos v. McNary,* 936 F.2d 579 (9th Cir.1991). By analogy, it would seem also to violate § 51.5's prohibition of discrimination.

■ Plaintiff seeks summary adjudication that Defendant terminated his participating provider status solely because of his disability, or, in the alternative, at least in part because of his disability. Defendant has expressly admitted that the termination was based in part on Plaintiff's record of substance abuse. However, Defendant has testified that the termination was also based in part on the Plaintiff's probationary status.

It is undisputed that Plaintiff was placed on probation by the Board of Podiatric Medicine due to his disability of prior chemical dependency and conduct directly resulting from that chemical dependency. Authority under the Rehabilitation Act, which contains the same definition of disability as that applied here, holds that status and conduct directly resulting from a disability is considered to be part of the disability, not a separate basis for termination. *See, e.g., Teahan v. Metro–North Commuter Railroad Co.,* 951 F.2d 511 (2nd Cir.1991); *Ham v. State of Nevada,* 788 F.Supp. 455 (D.Nev.1992); *Nisperos v. Buck,* 720 F.Supp. at 1432–33.

In *Teahan v. Metro–North,* the court held that an alcoholic employee terminated for excessive absences from work is terminated "solely by reason of" his handicap if the absenteeism was caused by the alcoholism. 951 F.2d at 511. In *Ham v. Nevada,* the court held that an adverse employment action against an alcoholic employee based on his conviction for drunk driving was based on the employee's alcoholism "since the drunk driving was a causally connected manifesta-

1. Curiously, Defendant's Opposition did not even mention Ms. Carpenter's deposition testimony. Defendant's response to Plaintiff's Statement of Undisputed Material Facts indicates that whether Plaintiff was terminated only under the 30 day notice provision and not the automatic termination provision is disputed, but cites no evidence putting that fact in controversy.

tion of the alleged handicap." 788 F.Supp. at 457. In *Nisperos v. Buck*, the court held that the defendant's claim that the plaintiff's termination was based not on the disability of drug addiction but on the grounds that plaintiff had been arrested for being under the influence of cocaine did not create a disputed issue as to whether the plaintiff was terminated because of his disabling addiction. 720 F.Supp. at 1432–33.

■ Under this line of cases, it is clear that termination based on conduct caused by chemical dependency and status which results from the dependency and/or the conduct caused by the dependency is termination based on the disability of chemical dependency. However, that does not end the inquiry in the Rehabilitation Act cases, but only shifts to the defendant the burden to show that the plaintiff is truly unqualified to hold the position as a result of the disability. This showing may not be based on generalizations about the disability, but must show that the qualification which adversely affects the disabled is "essential."

In *Nisperos*, the defendant contended that the plaintiff's past drug use and resulting arrest disqualified plaintiff because freedom from drug use and arrest was an essential qualification for a Department of Justice attorney working for the INS. The defendant argued that the Department of Justice is a law enforcement agency, and that representation of the INS sometimes involves drug-related issues, as when a proposed deportation is based upon the alien's illegal use of drugs. Thus, the defendant reasoned, employment of an attorney who had been arrested for illegal drug use would undermine the agencies' integrity.

The court rejected the argument, stating that "while in the best of all worlds attorneys should not be involved with drugs, defendant must do more than recite broad generalizations to demonstrate that a drug-free history is an 'essential' element of a general attorney's job." 720 F.Supp. at 1428. The court noted that an employer's interest in a drug-free workplace could justify termination of an employee currently using drugs, but not an employee with only a history of drug use.

*Id.* The court therefore granted summary judgment to the plaintiff.

This case is similar to *Nisperos*, although it arises in the context of a contractual rather than employment relationship. Defendant contends that Plaintiff's past drug use and resulting probation disqualify Plaintiff from participating in its network because a drug-free history and a non-probationary status is an essential qualification for a participating physician. Clearly, it is preferable that health care providers not become chemically dependent, and it is apparent that Defendant's obligation to its customers would justify its exclusion of physicians currently using drugs from its network. However, Defendant does not show why either a drug-free history or a non-probationary status is an essential qualification.

Defendant expressly disclaims any attempt to demonstrate that these qualifications are essential for the protection of Defendant's customers. Further, Defendant fails to make any showing that these qualifications are essential for the protection of any of its legitimate interests. Defendant also denies that it has a policy of terminating from its network all providers placed on probation, demonstrating that Defendant does not treat non-probationary status as a truly essential qualification for participation. Finally, the qualification of a drug-free history is clearly based on generalizations in the manner rejected in *Nisperos*. This is demonstrated in Defendant's opposition to this motion, in which Defendant argues that "the failure of drug rehabilitation programs and the recidivism rate of drug abusers is too well known to require extensive comment." The use of such generalizations about a class of disabled persons instead of evaluating the actual qualification of a disabled individual is a prohibited form of discrimination on the basis of disability.

■ Accordingly, the Court finds, as a matter of law, that Plaintiff's disability of a history of chemical dependency was a cause of the termination of his participating physician agreement, that Defendant has not shown that an absence of this disability is an essential qualification for participation in its network. Thus, the termination was discrim-

inatory. Discrimination is further shown by Defendant's practice of terminating based on the existence of the disability of past chemical dependency without regard to whether that disability put Plaintiff's patients at risk, while other termination decisions involve individualized assessment of such risk. Therefore, the Court finds, as a matter of law, that the termination violated California's antidiscrimination statute, Civil Code § 51.5.

### 3. Common Law Right to Fair Procedures Claim

■ Plaintiff further seeks summary adjudication that his membership in Defendant's network of participating physicians is subject to the common law right to fair procedures, which protects individuals from arbitrary exclusion or expulsion from private organizations that control important economic interests. *See Ezekial v. Winkley*, 20 Cal.3d 267, 142 Cal.Rptr. 418, 572 P.2d 32 (1977). Plaintiff contends that the termination of his membership breached those common law rights because such termination was arbitrary, capricious and violative of public policy. *Pinsker v. Pacific Coast Society for Orthodontists*, 1 Cal.3d 160, 166, 81 Cal.Rptr. 623, 460 P.2d 495 (1969) (person may not be excluded from private society conferring substantial economic advantages for arbitrary or capricious reasons).

The common law right to fair procedures has recently been held to extend to health care providers' membership in provider networks such as that operated by Defendant, because such managed care providers control substantial economic interests. *Delta Dental Plan v. Banasky*, 27 Cal.App.4th 1598, 33 Cal.Rptr.2d 381 (1994).[2] In the instant case, it is undisputed that Defendant controls substantial economic interests affecting Plaintiff, since prior to Plaintiff's termination approximately 15% of Plaintiff's patients were insured by Defendant. *See Ascherman v. San Francisco Medical Society*, 39 Cal.App.3d 623, 114 Cal.Rptr. 681 (1974) (estimated loss of business of 10% for first four years and another 10% thereafter is sufficient economic

deprivation to trigger application of doctrine of fair procedures). Accordingly, Plaintiff had a common law right to fair procedures, including the right not to be expelled from membership for reasons which are arbitrary, capricious and/or contrary to public policy.

■ For the same reasons that Plaintiff's termination is discriminatory as a matter of law, it is also arbitrary and capricious and violative of public policy as a matter of law. As this Court previously found on Plaintiff's motion for preliminary injunction:

> Based upon the public policy of encouraging drug rehabilitation and prohibiting discrimination for past dependency, a termination of a contract solely because of a person's status as a formerly chemical dependent person would be arbitrary and capricious.

The Court denied the motion for preliminary injunction because it appeared upon the record of that motion that the contract was terminated based in part upon the provision for automatic termination when the physician is placed on probation by an agency with disciplinary authority. The Court found that the automatic termination provision was not, in and of itself, arbitrary or contrary to public policy, and further, that the underlying probation was not shown to have been arbitrarily imposed. However, upon the record on this motion, it is now uncontroverted that the contract was not terminated pursuant to the "automatic" termination clause, but instead upon a decision to follow a policy of excluding any and all physicians who have formerly had any type of chemical dependency. This policy, and the express decision to follow it in the instant case, are arbitrary and capricious and violate public policy, and thus deprive Plaintiff of his common law right to fair procedures as a matter of law.

### 4. Termination in Violation of Public Policy Claim

■ Plaintiffs finally seek summary adjudication that the public policy of the State of

---

2. At the time this Court denied the motion for preliminary injunction, it was unclear whether the California courts would extend the right of common law procedures to apply against a business for profit, whose only fiduciary obligation was a private and contractual obligation to its enrollees and not to the public. However, *Delta Dental* has now resolved that question.

California is to encourage the rehabilitation of persons with chemical dependencies, and that Defendant terminated Plaintiff's contract in violation of that public policy. The public policies implicated in this claim are the same as those in the common law right of fair procedures claim, but this claim would stand independent of any determination that the common law right of fair procedures applies.

This claim is based on the line of cases recognizing a cause of action for termination of an employment contract in violation of public policy. *See, e.g., Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980); *Foley v. Interactive Data Corp,* 47 Cal.3d 654 (1988). Defendant correctly points out that the *Tameny* line of cases has never been extended to commercial contracts outside the context of employment, and in fact, that the California courts which have directly considered this question have declined to so extend it. *See Harris v. Atlantic Richfield Co.,* 14 Cal. App.4th 70, 74–75, 17 Cal.Rptr.2d 649 (1993) (*Tameny* cause of action does not extend to breach of franchise agreement); *Abrahamson v. NME Hospitals,* 195 Cal.App.3d 1325, 241 Cal.Rptr. 396 (4th Dist.1987) (*Tameny* cause of action does not extend to termination of contract of physician independent contractor).

Dicta of the California Supreme Court seems to support extension of the *Tameny* cause of action outside the context of employment. That court has noted that the *Tameny* cause of action in the employment setting was established by analogy to and extension of a long history of declaring a broader class of contracts unenforceable when the contracts themselves were contrary to public policy. *See Gantt v. Sentry Insurance,* 1 Cal.4th 1083, 1093–4, 4 Cal.Rptr.2d 874, 824 P.2d 680 (1992) ("We have, for example, long declined to enforce contracts inimical to law or the public interest …") However, the *Harris v. Atlantic Richfield Co.,* court expressly considered *Gantt* in finding that the public policy reasons against extending the *Tameny* cause of action outweighed those favoring such an extension. This Court will not extend this California cause of action in direct contradiction to the only California courts which have expressly considered such an extension. Therefore, this portion of Plaintiff's motion for summary adjudication will be denied.

*Conclusion*

For the reasons stated above, Plaintiff's motion is granted in part and denied in part as follows. Plaintiff is entitled to summary adjudication on the following issues:

1. Defendant Metropolitan Life applied the at-will termination provision of its participating physician agreement with Plaintiff in a discriminatory manner, thereby breaching California Civil Code § 51.5, in that Plaintiff's disability, a former chemical dependency, was a cause of Plaintiff's termination from participation in Defendant's network, and Defendant did not show freedom from the disability to be an essential qualification of participation.

2. Plaintiff's membership in Defendant's network of participating physicians is subject to common law fair hearing rights, and Defendant breached those rights by terminating Plaintiff for reasons which were arbitrary and capricious and which violate public policy.

All other aspects of Plaintiff's motion for summary adjudication are hereby denied.

IT IS SO ORDERED.