93 Cal.Rptr.2d 613 (2000)
78 Cal.App.4th 1292
Alexander CASTELLANOS, Plaintiff and Respondent,
v.
COASTAL PROVIDERS OF SAN LUIS OBISPO, Defendant and Appellant.
No. H019363.
Court of Appeal, Sixth District.
March 10, 2000.
Review Granted June 28, 2000.
*614 Kimble, MacMichael & Upton and D. Tyler Tharpe, Fresno, and Mary Ann Bluhm, Attorneys for Defendant and Appellant.
Mitehell J. Green, Attorneys for Plaintiff and Respondent.
PREMO, J.
In an action for declaratory relief, the trial court rendered judgment in favor of plaintiff Alexander Castellanos, M.D., and against defendant Coastal Providers of San Luis Obispo following a grant of plaintiffs motion for summary judgment. The judgment declared that defendant (1) was subject to the common law right of fair procedure, and (2) denied plaintiff that right by terminating plaintiff from a panel of physicians without notice and opportunity for a fair hearing. By way of an injunction, the judgment ordered defendant to provide plaintiff with written notice of the reasons for termination and a fair hearing at which plaintiff can respond. On appeal, defendant principally contends that the common law right of fair procedure does not apply to it. We disagree and affirm the judgment.

*615 BACKGROUND

Plaintiff is a physician, licensed to practice in California. Defendant is an Independent Physician Association (hereafter, IPA), an organization of physicians formed to contract with health maintenance organizations (hereafter, HMOs) to provide medical services to members of the HMO.
In August 1993, defendant contracted with Lifeguard, an HMO, to provide medical services to Lifeguard's members.[1] In November 1993, plaintiff and defendant entered into an agreement whereby plaintiff became a member of defendant's Lifeguard panel and eligible to treat Lifeguard's members.
The agreement provides that plaintiff is an independent contractor. It states: "None of the provisions of the Agreement is intended to create nor shall be deemed or construed to create any relationship between the parties hereto other than that of independent entities contracting with each other hereunder solely for the purpose for affecting the provisions of this Agreement."
The agreement also states: "The term of the Agreement shall begin on the date of execution and shall be effective for one calendar year thereafter, whereupon the terms of this Agreement will be automatically extended from year to year unless terminated by either party."
The agreement provides for its termination as follows: "This Agreement may be terminated by either party by written notice given at least 90 days in advance of such termination, or by IPA upon thirty (30) days' notice in the event of a material breach of this Agreement by Physician. Upon any such termination, the rights of each party hereunder shall terminate, except as otherwise provided for herein."
On January 15, 1996, defendant wrote to plaintiff and notified him that it was terminating the agreement as of April 14, 1996. Plaintiff wrote defendant and requested an explanation of the reasons for the termination. Defendant wrote plaintiff and stated that it was exercising the 90-day notice provision. Defendant allowed plaintiff to appear at a board meeting but never gave him specific reasons for the termination.
During the period January 1, 1995, to March 31, 1996, approximately 35 percent of plaintiffs gross income came from Lifeguard via defendant and approximately one-third of plaintiffs patients came from Lifeguard via defendant.

DISCUSSION
"`California courts have long recognized a common law right to fair procedure protecting individuals from arbitrary exclusion or expulsion from private organizations which control important economic interests [citations]....' [Citations.] Fair procedure comes into play where private organizations are `"tinged with public stature or purpose"' or attain a `"quasi-public significance,"' as contrasted with purely private associations which have no larger `"purpose or stature than pleasant, friendly and congenial social relationships." [Citation.]' [Citation.]" (Delta Dental Plan v. Banasky (1994) 27 Cal. App.4th 1598, 1607, 33 Cal.Rptr.2d 381.)
In determining whether a private association or organization is required to provide fair procedure before excluding or expelling members, the judicial inquiry is "focused on the practical power of the entity in question to affect substantially an important economic interest." (Ezekial v. Winkley (1977) 20 Cal.3d 267, 277, 142 Cal.Rptr. 418, 572 P.2d 32.) The preliminary question to be asked in determining whether adherence to fair procedure is required is whether the revocation of the privileges at issue would effectively impair an individual's right "`to fully practice his profession.'" (Ascherman v. Saint Francis Memorial Hosp. (1975) 45 Cal.App.3d 507, 511, 119 Cal.Rptr. 507.)
*616 In addition, as a general rule, "membership in an association, with its associated privileges, once attained, is a valuable interest which cannot be arbitrarily withdrawn. [This] comport[s] with the broader principle that one on whom an important benefit or privilege has already been conferred may enjoy legal protections not available to an initial applicant for the same benefit. [Citation.]" (Ezekial v. Winkley, supra, 20 Cal.3d at p. 273, 142 Cal.Rptr. 418, 572 P.2d 32.) Accordingly, procedural fairness in the form of adequate notice of the charges brought against the individual and an opportunity to respond to those charges (Smith v. Valley o General Hospital (1985) 170 Cal. App.3d 450, 457, 216 Cal.Rptr. 189) is an indispensable prerequisite for one's expulsion from membership in such a society or association, notwithstanding provisions to the contrary in the association's bylaws (Pinsker v. Pacific Coast Society of Orthodontists (1974) 12 Cal.3d 541, 552-553, 116 Cal.Rptr. 245, 526 P.2d 253; see also Anton v. San Antonio Community Hosp. (1977) 19 Cal.3d 802, 824, 140 Cal.Rptr. 442, 567 P.2d 1162).
The foregoing principles have been applied to professional organizations, in which membership may be an economic necessity for pursuit of the profession, or which wield such power as to affect "significant economic and professional concerns[, clothing them] with a `public interest.'" (Pinsker v. Pacific Coast Society of Orthodontists, supra, 12 Cal.3d at pp. 550, 552, 116 Cal.Rptr. 245, 526 P.2d 253, fn. omitted.) These principles also apply generally to all decisions concerning membership on a hospital staff. (Smith v. Vallejo General Hospital, supra, 170 Cal.App.3d at p. 457, 216 Cal.Rptr. 189; see also Miller v. Eisenhower Medical Center (1980) 27 Cal.3d 614, 626-627, 166 Cal.Rptr. 826, 614 P.2d 258.) In addition, they have been applied to expulsion from a residency program (Ezekial v. Winkley, supra, 20 Cal.3d at p. 270, 142 Cal.Rptr. 418, 572 P.2d 32) and appear to apply to the revocation of provisional staff privileges (see, e.g., Bonner v. Sisters of Providence Corp. (1987) 194 Cal.App.3d 437, 439-40, 239 Cal.Rptr. 530).
The parties agree that the fair procedure principles have not heretofore been applied to an IPA. Plaintiff, however, relies by analogy on two recent cases: one applied the principles to an HMO; and the other applied the principles to a health insurance company.
In Delta Dental Plan v. Banasky, supra, 27 Cal.App.4th 1598, 33 Cal.Rptr.2d 381, fair procedure principles were applied to a dental health plan's decisions regarding usual, customary, and reasonable fees to be paid to participating dentists for their services. The plan's agreement with the participating dentists provided for internal review of such fees only; it did not provide for arbitration or judicial review, as requested by the dentists. (Id. at pp. 1601-1602, 33 Cal.Rptr.2d 381.) The court concluded: "Delta controls an important economic interest as the largest dental health plan in California, covering over 8,000,000 individuals. Therefore, continued membership on Delta's panel of participating dentists, and Delta's modification of a participating dentist's list of usual, customary and reasonable fees, implicate the right to fair procedure." (Id. at p. 1607, 33 Cal.Rptr.2d 381.)
In Ambrosino v. Metropolitan Life Ins. Co. (N.D.Cal.1995) 899 F.Supp. 438, a plaintiff podiatrist entered into an agreement with the defendant health insurance company similar to the one at issue here. The agreement provided that the plaintiff was an independent contractor and the agreement could be terminated with or without cause by giving 30 days' notice of termination. The plaintiff was placed on probation by his governing board for a short-term chemical dependency problem and his conduct while suffering from that chemical dependency. When the defendant learned of the plaintiffs problems, it recommended plaintiffs delistment for failure to meet the criteria for retention. *617 It gave the plaintiff 30 days' notice of termination of the agreement. The plaintiff requested a hearing; the defendant denied the request and terminated the agreement. (Id. at pp. 440-441.) The court cited Delta Dental Plan for the proposition that "[t]he common law right to fair procedures has recently been held to extend to health care providers' membership in provider networks such as that operated by Defendant, because such managed care providers control substantial economic interests." (Ambrosino v. Metropolitan Life Ins. Co., supra, 899 F.Supp. at p. 445.) And it pointed out that there was no dispute that the defendant "controlled] substantial economic interests" affecting the plaintiff, in that about 15 percent of the plaintiffs patients were insured by defendant. (Ibid.) It therefore concluded that the plaintiff "had a common law right to fair procedures, including the right not to be expelled from membership for reasons which are arbitrary, capricious and/or contrary to public policy" (ibid.), the at-will provision in his agreement with defendant notwithstanding (id. at p. 446).
Defendant counters with two cases that predate Delta Dental Plan and Ambrosino.
In Abrahamson v. NME Hospitals, Inc. (1987) 195 Cal.App.3d 1325, 241 Cal.Rptr. 396, the plaintiff physician was given a position as head of the defendant's laboratory and pathology department pursuant to an agreement which provided that he was an independent contractor and the agreement could be terminated without cause by either party upon written notice. (Id. at p. 1327, 241 Cal.Rptr. 396.) When the defendant terminated the plaintiff, the plaintiff sued claiming that his termination was contrary to public policy in that he could only be terminated without cause for a lawful reason. (Id. at pp. 1328-1329, 241 Cal.Rptr. 396.) The court held that because the plaintiff was an independent contractor, cases requiring good cause to terminate an employee were inapposite. (Id. at pp. 1329-1330, 241 Cal.Rptr. 396.) Additionally, because the agreement specified that he could be terminated without cause, there was no breach of the agreement when he was terminated without cause. (Id. at p. 1330, 241 Cal.Rptr. 396.)
Thus, in Abrahamson, the parties did not raise the fair procedure issue. Only contract principles were at issue.
In Abrams v. St. John's Hospital & Health Center (1994) 25 Cal.App.4th 628, 30 Cal.Rptr.2d 603, the plaintiff physician was given a position as head of the defendant's pathology department pursuant to an agreement which provided that he was an independent contractor and the agreement could be terminated by either party with 90 days' notice or, if for cause, 30 days' notice. (Id. at p. 632, 30 Cal.Rptr.2d 603.) The agreement also provided that the plaintiff waived any rights to a hearing and appellate review under the hospital or medical staff by-laws for purposes of challenging a suspension or termination. When the defendant terminated the plaintiff, the plaintiff sued claiming breach of contract, among other things. In affirming the denial of a motion for a preliminary injunction, the court noted the general rule, discussed above, that "when a hospital wishes to terminate the staff privileges of a doctor, it must do so in a `procedure comporting with the minimum common law requirements of procedural due process' wherein it is shown that the hospital has `adequate cause' for termination." (Id. at p. 636, 30 Cal.Rptr.2d 603.) But the court concluded the plaintiff had no right to a hearing under the hospital or medical staff bylaws because he contracted away those rights. (Id. at p. 638, 30 Cal.Rptr.2d 603.) The conclusion was based upon the fact that the plaintiff had an exclusive contract to provide medical services to the hospital. The court explained that doctors who obtain such exclusive contracts "are bound by the contractual termination provisions to which they have agreed. These doctors are to be contrasted with other staff physicians who do not hold these exclusive contracts but who are entitled to certain due *618 process hearing rights pursuant to hospital and medical staff bylaws." (Id. at p. 631, 30 Cal.Rptr.2d 603.)
Thus, Abrams, like Abrahamson, did not address the fair procedure issue. Only due process rights stemming from bylaws were at issue. Moreover, to the extent that Abrams suggests that a physician's contract rights prevail over fair procedure rights, we note that the case is limited to a physician who has an exclusive contract to provide services. Such is not the case here.
Both Delta Dental Plan v. Banasky, supra, 27 Cal.App.4th 1598, 33 Cal. Rptr.2d 381 and Ambrosino v. Metropolitan Life Ins. Co., supra, 899 F.Supp. 438, support the conclusion plaintiff had a common law right to fair procedure before defendant could terminate his Lifeguard panel membership, the at-will provision in the agreement notwithstanding.
Defendant urges that the fair procedure right has been invoked in the hospital privileges context because of the quasi-governmental function that hospitals serve by their post-licensure regulatory function. It reasons that this justification does not apply to an IPA because an IPA is no more than a commercial entity. This analysis is erroneous.
We reiterate: the judicial inquiry is focused on the practical power of the entity in question to substantially affect an important economic interest. (Ezekial v. Winkley, supra, 20 Cal.3d at p. 277, 142 Cal.Rptr. 418, 572 P.2d 32.) An IPA performs, for all practical purposes, the same physician-selection function as an HMO (Delta Dental Plan) or a health insurance company (Ambrosino). And this function necessarily affects important economic interests. Here, for example, Lifeguard patients constitute one-third of plaintiffs practice.
Defendant argues that Delta Dental Plan and Ambrosino are inapposite. It points out that Delta Dental Plan had nothing to do with a termination and Ambrosino addressed a "for cause" termination (chemical dependency). These points may be. But the cases nevertheless stand for the proposition that the common law right to fair procedure applies to a health care plan's decision to terminate a health care provider's participation in the plan and overrides a provision in the agreement between the two allowing termination without cause. And, again, defendant is the functional equivalent of a health care plan insofar as it can terminate a health care provider's participation in a plan.
Defendant next argues that Delta Dental Plan and Ambrosino have been superceded by Health and Safety Code section 1373.65. This statute, enacted in 1994 and amended in 1995 (Stats.1994, ch. 614, § 6; Stats. 1995, ch. 774, § 3), requires HMOs to "... disclose the reasons for the termination of a contract with a provider to the provider only when the termination occurs during the contract year ... "or "... whenever a plan indicates that the provider's contract is being terminated for quality of care reasons...." (Health & Saf.Code, § 1373.65, subds. (c), (d).) According to defendant, the statute demonstrates that there is no notice requirement, much less a fair procedure requirement, under the circumstances of this case. We disagree.
The statute requires notice of the reasons for all terminations except a termination occurring at the end of a contract year. Thus, given that defendant terminated plaintiff during the contract year, plaintiff would have a right to a notice of the reasons for his termination if Health and Safety Code section 1373.65 applied to IPAs. Though it is true that the statute does not also require a hearing, it does not follow that the statute denies a right to a hearing by its silence on the issue. This is because the obvious purpose of the statute is to protect physicians from arbitrary termination, notwithstanding at-will termination clauses. Such protection would be *619 meaningless without some post-notice opportunity to be heard in rebuttal, be it a formal hearing or written communication. (Dickey v. Raisin Proration Zone No. 1 (1944) 24 Cal.2d 796, 811-812, 151 P.2d 505 [statute cannot be construed so as to subordinate its purpose to a supposed limitation].)
Defendant finally argues that the Legislature has expressly declined to extend fair procedure rights to IPAs and has limited application of such rights to peer-review bodies when making medical disciplinary decisions; it adds that applying fair procedure rights to IPAs would ignore the policies of controlling health care costs and burden the efforts of private and public enterprise to pursue that goal. It remains, however, that the common law right to fair procedure is one of long-standing and, given its applicability to HMOs and health insurance companies, logically applicable to IPAs.
Defendant secondarily argues that plaintiff failed to prove his entitlement to an injunction. According to defendant, plaintiff was required to show that he applied to be a Lifeguard provider to it, as distinguished from its predecessor. We disagree.
It is undisputed that defendant assumed the physician-panel responsibilities of Central Coast Provider Association. Defendant wrote plaintiff on June 1, 1996, informing: "On March 14th, [defendant], which had assumed the Lifeguard Commercial Panel for [Central Coast Provider Association] effective February 1, 1996, advised you that your February 14th letter summarizing your position would be presented to [defendant's] Board.... The Board will consider and act upon this matter at its next meeting and, as indicated above, we will advise you of that date as soon as it is set." In short, defendant stands in the shoes of its predecessor.
Defendant adds that plaintiff failed to demonstrate that damages were an inadequate remedy. This analysis is erroneous.
This was an action for declaratory relief, an action that, by nature, seeks no substantive relief. And, in reality, the injunction is unnecessary since the obligation to afford plaintiff fair procedure follows from the judgment's declaration without an injunction.
Defendant finally urges that it presented a triable issue of fact whether it afforded plaintiff fair procedure. We disagree.
It is undisputed that defendant did not provide plaintiff with any reason for his termination. Though it afforded plaintiff a hearing, the hearing was meaningless without plaintiff knowing the reason for his termination.

DISPOSITION
The judgment is affirmed.
COTTLE, P.J., and ELIA, J., concur.
NOTES
[1] An IPA named Central Coast Providers Association contracted with Lifeguard. Defendant became Central Coast's successor during the time in question. For clarity and simplicity, we limit our references to defendant.