**MX GROUP, INC., et al., Plaintiff,**

v.

**CITY OF COVINGTON,
et al., Defendants.**

**No. CIV. A. 98–7.**

United States District Court,
E.D. Kentucky,
at Covington.

Aug. 8, 2000.

William C. Oldfield, David E. Davidson, Cobb & Oldfield, Covington, KY, for Plaintiff.

Stephen T. McMurtry, McMurtry & Wolff, Covington, KY, for Defendant.

## *OPINION AND ORDER*

BERTELSMAN, District Judge.

This matter arises out of the efforts of the plaintiff, MX Group, Inc., to open a methadone treatment clinic in the City of Covington, Kentucky.

The action arises under the Americans with Disabilities Act (ADA) and Rehabilitation Act[1] and the plaintiffs' contentions that the denial of a permit for the clinic also violates their constitutional rights to substantive due process and equal protection.[2]

Inasmuch as the court has concluded that the defendants have violated the ADA with regard to the clinic it is unnecessary to address the other issues. The case was tried without a jury and submitted on the transcript and briefs. Pursuant to FED. R. CIV.P. 52, the court renders the following as its Findings of Fact and Conclusions of Law herein.

## FINDINGS OF FACT

The facts are largely undisputed. The plaintiff, MX Group, Inc., has been attempting to establish a methadone treatment clinic in Covington since February 1997. The goal of a methadone treatment program is to have the patient drug free in two and one-half years. Relapses by the patient are not uncommon.

Methadone treatment is regulated by both the federal and state authorities. The Food & Drug Administration, as well as the state narcotics authorities, have established requirements for methadone treatment facilities. Methadone is a useful program to treat drug abuse.

In the summer of 1997, MX began the process of finding a place to open its clinic. Federal and state regulations are specific about the space required. In order to find a suitable location, MX contacted a local commercial realtor, Chuck Eilerman.

The activities of MX Group did not escape the attention of the City of Covington. Ralph Hopper, the City's former zoning administrator, testified that he was aware of MX Group from newspaper articles he had read. Hopper testified that he knew the business of MX—methadone treatment of those addicted to the use of opiates—would be controversial, and he advised his superiors that the controversy was coming. Hopper also testified that he spoke about MX with the City's Economic Development Director, Ella Frye, and the City Manager, Greg Jarvis, before the zoning permit was sought and issued. He testified that this was not a normal procedure for him in his job as zoning administrator.

In August 1997, MX found a location that was suitable for its operation at the building known as Covington Station[3] at 200 West Pike Street in Covington. This

---

1. Since the results are the same under both Acts, the court will refer solely to the ADA.

2. These counts are brought pursuant to 42 U.S.C. § 1983.

3. In bygone days, the building had been a railroad station.

location was accessible, affordable and available. MX entered into a lease agreement with the owner of part of the building. The building is an office condominium, and Bernie Beck was an owner of a majority of the space.

After the location was chosen and the lease was signed, Melissa Fabian, an employee of MX, went to the City's zoning office and spoke with Ralph Hopper about the needed permit to open the clinic. The zoning permit application was completed by Mr. Hopper based upon information provided by Ms. Fabian. Mr. Hopper determined that the clinic fit within the zone in which the clinic intended to locate, the Covington Business District, which allowed medical offices. Mr. Hopper issued the zoning permit to MX on the day it was sought. About this time, William Dorsey, an Assistant Chief of Police, began an investigation into the secondary effects of methadone clinics.

Shortly after the zoning permit was issued, residents near 200 West Pike Street appeared at a City Commission meeting to express their displeasure. Assistant City Manager Tom Steidel was asked by the City Commission to conduct a public hearing in regard to the MX clinic. The purpose of this public hearing was unclear. There was no attendance taken at the hearing, and it is unclear whether any of the City Commissioners attended the meeting. The meeting, at the very least, was boisterous and had some angry and loud participants.

After the Steidel hearing, an owner of another portion of the Covington Station, Marc Tischbein, filed an appeal from the decision to issue the zoning permit. This appeal led to a hearing before the Covington Board of Adjustment in December 1997. In the time between the Steidel hearing and the Board of Adjustment hearing, there was much activity. Dorsey continued his investigation and spoke on many occasions with Hopper and Steidel, and Hopper met and consulted with members of the Covington Business Council who were working on ordinance changes to stop the opening of the methadone clinic.

Dorsey's investigation led to his testifying before the Board of Adjustment. He testified at that time that the conduct of clients of methadone clinics lead to a host of ill effects, including increased murders, robberies and other heinous actions in the neighborhood of the clinic. Increased drug usage and sales in the neighborhood of the clinic were also reported. He also testified that methadone clinics were nothing more than legal drug dispensing sites with little or no beneficial effect. Dorsey gave these opinions without any statistics or specifics about these supposed ill effects.

The Board of Adjustments overruled the Zoning Administrator and revoked the zoning permit.

MX appealed to the Kenton Circuit Court. This appeal was dismissed for lack of a necessary party under the prevailing zoning appeal statute.[4] The Judgment of the Kenton Circuit Court stated that its dismissal was with prejudice. Upon subsequent motion by MX requesting the court to change the dismissal to one without prejudice, the court declined to change its characterization of its dismissal. No further appeals were taken, and the decision of the Kenton Circuit Court with regard to the site at 200 West Pike Street is now conceded by the plaintiff to be *res judicata*.

When the Covington Station location had been finally denied to the plaintiff, it began to look for another location. MX communicated with Hopper about other locations in the City where the clinic could go. Hopper told MX that the clinic would be permitted somewhere in the City.

MX's continued search for a location led to a site at 1 West 43rd Street in Covington. This was a former medical building

4. KRS 100.347.

located in a shopping center zone. That zone permitted medical clinics.

The building was described for the court, and pictures of the building were introduced. The building was in a commercial area, near a shopping center, in front of the City's trash compacting station, bordering an industrial zone, and separated from housing by a four-lane highway. The building was in a location with good public transportation, was affordable and available. When Hopper indicated the zone was appropriate for the clinic, MX agreed to rent the location.

Hopper knew that this new location would also be controversial, so he wrote a memo to City Manager Jarvis on March 17, 1998. This memo stated that it was Hopper's opinion that the clinic would be permitted in the shopping center zone. This memo led to a response from Joe Condit, the City Attorney for Covington. In short, Condit's letter stated that the methadone clinic was not a permitted use anywhere in the City. Hopper told MX that the clinic would not be permitted to open anywhere in the City of Covington.

The Covington Business Council had been working prior to the Board of Adjustment hearing to modify City ordinances to prohibit methadone clinics. This organization produced a report entitled "Preventing the Proliferation of Addiction Treatment Facilities in Covington." Pat Lance testified that he was the sole author of this document, though it was reviewed by legal counsel for the Covington Business Council.

Lance consulted with Hopper about this report and the ways in which to change the zoning ordinance to exclude the methadone clinic and any other new drug treatment programs. Lance testified that he did not conduct any type of hearing and that he knew about the nature of methadone treatment and clinic operation only from what Dorsey told him. Lance relied on the information provided by Dorsey and on the "very vocal concerns of neighborhood and business in drafting the ordinance." He testified that different information about methadone and methadone clinics would have made a difference in his opinion about the work he was doing. He made no claim to being objective in his approach to this issue.

The proposal from the Lance report ended up being the framework for an amendment to the zoning ordinance made by the City in June 1998. The amendment was to change the definition of "addiction treatment facility." The difference in the two definitions is set out in the testimony and exhibits. Ralph Hopper testified that the change had no effect other than to control addiction treatment facilities in the City and that the number of addiction treatment facilities permitted in the City would be limited to two.

In other words, after MX's efforts to open its methadone clinic at the Covington Station had been thwarted, its effort to open the clinic at a second site was also cut short by the adoption of an amendment to the Covington zoning ordinance prohibiting the opening of such a clinic in any zone in the City. That amendment reads in pertinent part as follows:

TITLE XV: LAND USAGE

CHAPTER 158. ZONING CODE

158.006 DEFINITIONS

For the purposes of this chapter the following definitions shall apply unless the context clearly indicates or requires a different meaning.

"ADDICTION TREATMENT FACILITY." Any building, structure or space whose principal or primary function is the reception, housing, and/or care of chemically dependent adults and/or their minor children, and which by distribution of synthetic narcotics, or any other method, attempts to control, suppress, or eliminate a person's mental or physical dependence on any illegal or harmful substance. Any permitted accessory use is allowed within any zone and shall not be interpreted to include addiction

treatment facilities, unless the use is specifically stated to include addiction treatment facilities. No general use or description set out elsewhere shall be deemed or construed to include such use.

158.044 REGULATION OF ADDICTION TREATMENT FACILITIES

(C) Maximum occupancy shall not exceed one person per each 200 square feet of gross floor area in the facility.

This ordinance had the effect of banning a methadone clinic from any zone in the City without a text amendment to the zoning ordinance.

## CONCLUSIONS OF LAW

**1. Plaintiff's clients are "persons with disabilities"** [5]

■ The recovering heroin addicts who are the potential clients of MX are "persons with a disability" within the meaning of the ADA. In an unpublished order granting a preliminary injunction, Judge Susan Illston of the U.S. District Court for the Northern District of California grappled with the same issue. *Bay Area Addiction Research and Treatment, Inc. v. City of Antioch,* No. C98-2651 (N.D.Cal. March 15, 2000) (order granting preliminary injunction).[6] The *Bay Area* district court found that recovery from addiction using methadone treatment is a process that may take weeks, months, or years, and after entering treatment many patients continue to be substantially impaired in their ability to raise families for some time. *Id.* at p. 10, n. 15. Heroin addiction is usually accompanied by other psychiatric and medical problems, which also serve to substantially impair patients' life activities. *Id.,* n. 16. These problems include such conditions as HIV and chronic hepatitis C. *Id.* Finally, the methadone treatment itself imposes substantial limitations upon patients' lives: it requires a daily visit to the clinic at prescribed times (which affects patients' ability to work or live where they choose), counseling, random drug testing and intensive scrutiny. *Id.; see Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, at 2146, 144 L.Ed.2d 450 (1999) (negative effects of mitigating measures are relevant in determining whether major life activity is substantially limited).

In the instant case, plaintiff MX has put on similar evidence to that in *Bay Area. See* Doc. # 81, Transcript, Volume 1, pp. 51–52, 62–63, 174–75, 177–78.

Plaintiff has shown by a preponderance of the evidence that the effects of having a drug addiction and the lengthy treatment that it entails impairs the major life activities of, at a minimum, working and parenting.

Even if this court would decide that the effect of methadone treatment results in a mere transitory disability, plaintiffs must still prevail on this issue because drug-addicted individuals can be shown to have a "record of" or are "regarded as" having a disability. *See* 42 U.S.C. § 12102(2)(B)and (C).

An individual has a record of a disability if he or she "has a history of . . . a mental or physical impairment that substantially limits one or more major life activities." *Hilburn v. Murata Elec. North Amer.,*

---

**5.** Section 12102 of the ADA defines disability as follows:

(2)Disability. The term "disability" means, with respect to an individual-
(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment.

The implementing regulations of the ADA include drug addiction and alcoholism among the conditions constituting a physical or mental impairment. *See* 45 C.F.R. § 84 Appendix A, Subpart A.

**6.** This order was entered by the district court on remand from the Ninth Circuit Court of Appeals. *See Bay Area Addiction Research and Treatment, Inc. v. City of Antioch,* 179 F.3d 725 (9th Cir.1999), discussed *infra.*

*Inc.,* 181 F.3d 1220, 1229 (11th Cir.1999) *quoting* 29 C.F.R. § 1630.2(k)(1997).

"The intent of this provision ... is to ensure that people are not discriminated against because of a history of disability." *Id.* Thus, an individual who has recovered from a disabling condition but faces discrimination because of fears and stereotypes is protected under the ADA and Rehabilitation Act. *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 509 (7th Cir. 1998). "[F]ormer drug addiction appears to meet the definition of 'a record of' a serious mental or physical impairment." *Ambrosino v. Metropolitan Life Ins. Co.,* 899 F.Supp. 438, 442 (N.D.Cal.1995).

The potential clients of plaintiff in this case, all individuals with a record of narcotics addiction, are therefore individuals with disabilities who are protected under the ADA.

An individual is "regarded as" having a disability if he or she has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation or "[h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment." 29 C.F.R. § 1630.2(1).

In *Bay Area*, plaintiffs pointed to language in defendants' pleadings characterizing them as engaging in criminal behavior and unable to control their anger. 179 F.3d at 729 & n. 5. The record of the City Council meeting demonstrated that the opposition to the proposed site of the clinic was rooted in the fear that BAART's patients would continue to abuse drugs and commit crimes. *Id.*

In our case, similar evidence shows that defendants regard plaintiff's clients as disabled. The testimony of William Dorsey before the Board of Adjustment bears this out:

Q: Why don't you tell the Board just a little bit about what types of things you looked at.

A: The things I've looked at in connection with this particular type of a for-profit clinic is the crime that goes with it or the activity that goes with it. Almost all the cases where I've contacted cities where there are methadone treatment clinics, I've been told the same story. There's trouble outside the clinic from clients that come either [sic] late, can't get their medicine, they may be involved in altercations outside the clinic. Also, the outside portions of these clinics are nothing but open-air drug markets where other types of drugs are bought, sold and traded. It's not unusual for there to be violence at the clinics. There's been a reported number of shootings and deaths related to methadone treatment clinics for profit, there's also been a large number of burglaries where people break in to steal these drugs. So in near and around wherever the for-profit clinics are located, there appears to be an increased level of criminal activity which involves violence, guns and drugs.

(Doc. # 38, Exhibits to Defendants's response to plaintiffs's motion for summary judgment, Transcript of Board of Adjustment Hearing, p. 28–29).

The same transcript contains multiple references by city residents commenting on the criminal element that will descend on the area if the methadone clinic is allowed to open. *Id.* p. 211–236. Defendants have used testimony throughout this matter that indicates it regards potential clients of plaintiffs's clinic as disabled.

Congress intended the ADA to include drug-addicted individuals participating in drug treatment plans within the category of individuals with disabilities. Drug-addicted individuals undergoing treatment must battle for years, even an entire lifetime, to overcome the addiction's disabling effects, thus such disability is not one which can be considered transitory.

## 2. Plaintiff has standing to assert the ADA claim herein.

■ The plaintiff, MX Group, has standing to represent the rights of its prospective clients in this action. The court is in agreement with the rationale of the court in *Innovative Health Systems v. City of White Plains*, 117 F.3d 37 (2d Cir.1997) (drug and alcohol rehabilitation center) (extensive treatment of legislative history of ADA). The thorough discussion and analysis there need not be repeated here.

## 3. Defendants are in Violation of the ADA.

Defendants do not even deny that the ADA applies to zoning matters. Nevertheless, it is well to note the authorities establishing that proposition. The ADA forbids all discrimination against persons with disabilities by a public entity regardless of context. *Innovative Health Systems v. City of White Plains*, 117 F.3d at 45. *Accord: Bay Area Addiction Research and Treatment, Inc. v. City of Antioch*, 179 F.3d 725 at 730–1 (9th Cir.1999).

As pointed out by the Ninth Circuit: "Although we recognize that zoning is traditionally a local activity, Congress has spoken." *Id.* at 725.

Although the City "may consider legitimate safety concerns in its zoning decisions, it may not base its decisions on the perceived harm from ... stereotypes and generalized fears." *Id.* at 49.

■ There is no doubt from the evidence at the trial of this case that this is exactly what the City of Covington has done here. The ordinance under consideration is a blanket prohibition of all methadone clinics from the entire city. It is discriminatory on its face and thus violative of the ADA and void.

The defendants argue that the plaintiff has not proposed a "reasonable modification." There is authority that such is not required when an ordinance is facially invalid. *Bay Area Addiction and Research Treatment v. City of Antioch*, 179 F.3d at 725 (9th Cir.1999). Even if it were required, the plaintiff has met this requirement by acquiring an option on a new site after the first one at the old railroad station was disapproved. Plaintiff's proposal of this reasonable modification was met by the City's enacting a total prohibition of its clinic anywhere in the City.

The City's exclusionary message was clear and, in the light of it, no further exhaustion of remedies was required. The law requires no one to perform a useless act. *See Jaffe–Spindler Co. v. Genesco*, 747 F.2d 253, 258 (4th Cir.1984); *Assoc. of Westinghouse Salaried Emp. v. Westinghouse Elec. Corp.*, 283 F.2d 93, 96 (3rd Cir.1960); *Mutual Assurance, Inc. v. Wilson*, 716 So.2d 1160, 1165 (Ala.1998); *Bank of Papillion v. Nguyen*, 252 Neb. 926, 567 N.W.2d 166, 171 (1997).

The action by the City was a panicked reaction to public hysteria based on stereotypes concerning MX's clients, who were either "persons with disabilities" or regarded as such. This is exactly what the ADA forbids.

The highly professional police force of the City of Covington is fully capable of dealing with any of the feared evils which might occur. The court notes again that there is no convincing evidence that any such evils actually will occur. If the operation of the clinic develops into a public nuisance, there is ample legal authority to deal with that eventuality. Further reasonable accommodations are possible in the way of limited hours and conditions of operation.

As it is, however, the blanket prohibition of the clinic from locating anywhere in the City violates the ADA.

Therefore, the court being advised,

**IT IS ORDERED** as follows:

1. That an injunction be entered concurrently herewith granting plaintiff its requested injunctive relief.

2. That, the plaintiff having reserved on the issue of damages, the parties at-

tempt to settle this issue and all remaining issues and file a status report herein concerning their efforts not later than **forty-five (45) days** from the date of this Opinion and Order.

### ORDER AND INJUNCTION

Pursuant to the Opinion and Order entered concurrently herewith, the court being advised,

**IT IS ORDERED AND ADJUDGED AND DECLARED as follows:**

1. That the defendant City of Covington Commissioner's Ordinance No. 0–23–98, banning plaintiff's proposed methadone clinic from every zone in the City of Covington violated Title II of the Americans with Disabilities Act, and is null, void and of no effect;

2. That the defendants, City of Covington and the City of Covington Board of Adjustments, and all of their agents, servants and employees and all other persons or entities in active concert or participation with them are hereby restrained and enjoined from withholding the necessary permits and permission from the plaintiff for a methadone clinic, except on a basis that would be applicable to any other medical clinic under ordinances and regulations other than the ordinance invalidated in paragraph 1 hereof.